Robert R. CARTER, Albert Weis, Andrew W. Nobles, Raymond A. Bedgood and Weis Drive-In Theater, Inc., a Georgia Corporation, Plaintiffs,

v.

Honorable Jack J. GAUTIER, District Attorney for the Macon Judicial Circuit, State of Georgia; Honorable J. E. Bloodworth, Sheriff of Bibb County, Georgia; Honorable Raymond L. Wilkes, Deputy Sheriff of Bibb County, Georgia; and Honorable Harry L. Harris, Deputy Sheriff of Bibb County, Georgia, Defendants.

Civ. A. No. 2422.

United States District Court
M. D. Georgia,
Macon Division.

Sept. 15, 1969.

T. Reese Watkins, John D. Comer, Macon, Ga., for plaintiffs.

Wallace Miller, Jr., Jerome Strickland, Manley F. Brown, Macon, Ga., for defendants.

Before BELL, Circuit Judge, and BOOTLE and ELLIOTT, District Judges.

## OPINION AND ORDER

BOOTLE, District Judge:

The plaintiffs are identified as follows: Weis Drive-In Theater, Inc. (the corporation) owns and operates a public drive-in movie theater near Macon, Georgia; Albert Weis is president of the corporation; Robert Carter is its Macon manager; Raymond A. Bedgood is the theater manager, and Andrew W. Nobles is the projectionist operating the movie projectors at the theater.

The defendants are sufficiently identified in the caption.

Prior to and on January 16, 1969, the corporation had acquired the right to exhibit or show a movie entitled "Vixen" and on January 16, 1969 all of the plaintiffs were in lawful possession of the film to said movie.

On the evening of January 16, 1969, defendants Wilkes and Harris, as Deputy Sheriffs, entered the projection room of said theater, arrested plaintiffs Nobles and Bedgood and seized said film. These actions were performed without a warrant having been previously issued, after said Deputies had conferred with the defendant Gautier, the District Attorney, and after said two Deputies had viewed approximately one-third of said film, and without any adversary hearing or proceeding having been previously conducted on the question of obscenity. These acts of the two Deputies were performed under the direction of and pursuant to instructions from defendant, Gautier, the District Attorney, and defendant Bloodworth, the Sheriff. All of the defendants acted in good faith in the premises.

The defendants have refused to return the file to the plaintiffs and two of the plaintiffs, Carter and Albert Weis, were subsequent to the film's seizure, indicted by the Bibb County Grand Jury for an alleged violation of Georgia Code Section 26–6301 in that they did possess and exhibit said obscene matter, namely the said film entitled "Vixen".

Predicating jurisdiction of this court upon 28 U.S.C.A. § 1343 and 42 U.S.C.A. 1983 and praying for a three-judge court under 28 U.S.C.A. § 2281 et seq., the plaintiffs attack the seizure of the film as illegal because of the absence of a prior to seizure adversary hearing on the

question of obscenity, attack the constitutionality of two Georgia statutes 26–6301 and 27–301 upon grounds hereinafter stated, and pray for the following relief:

(1) the immediate return of the film,

(2) that defendant Gautier be enjoined from prosecuting the plaintiffs for the offense of possessing and exhibiting said film,

(3) that defendant Gautier be enjoined from using said film or any copies thereof as evidence in any criminal prosecution of the plaintiffs, and

(4) that Georgia Code Section 26–6301 as amended (Acts of the General Assembly of Georgia 1963, pages 78–79) be declared unconstitutional as violative of the First, Fourth and Fourteenth Amendments to the Constitution of the United States in that the standards set forth therein do not conform to the standards required by the First and Fourteenth Amendments to the Constitution of the United States in that among other reasons the statute omits the essential requirements that material to be obscene must be utterly without redeeming social value and in that such statute does not afford plaintiffs the equal protection of the laws of the State of Georgia and of the United States as required by the Fourteenth Amendment to the Constitution of the United States; and that Georgia Code Section 27–301 (Acts of the General Assembly of Georgia 1966, page 567) be declared to be unconstitutional as violative of said Amendments to the Constitution of the United States insofar as the same purports to authorize seizure of moving picture films without a prior adversary hearing having been held in which a determination had been made that such film is obscene.

The original complaint contained a prayer for damages but by amendment that prayer was deleted.

The parties have been heard through evidence in the form of depositions and through extensive written briefs and oral arguments and the case is now ready for decision.

▮▮ Under the law as now established by the Supreme Court we are convinced that it is illegal for officers to seize a movie film unless and until there has been held a prior adversary judicial hearing upon the question of obscenity. A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). By the First Amendment to the Constitution of the United States Congress is prohibited from making any law abridging the freedom of speech. The Fourteenth Amendment has the effect of placing a similar prohibition upon the States. Thornhill v. State of Alabama, 310 U.S. 88, 95, 60 S.Ct. 736, 84 L.Ed. 1093, 1098 (1940). Thus all citizens of the United States are guaranteed freedom of expression. This freedom, of course, does not extend to obscenity. Obscenity is not protected because it is "utterly without redeeming social importance." Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498, 1507 (1957). The difficulty arises from the fact that what is obscene and what is not obscene is sometimes separated by a line which is "finely drawn." Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460, 1472 (1958). Accordingly, "the Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." Bantam Books v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584, 590 (1963). The seizure of "Vixen" was constitutionally deficient because its owners and possessors were not first allowed an adversary hearing on the question of its obscenity. Cases so adjudicating following A Quantity of Copies of Books, supra, are fast accumulating. Among them, see Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir.1968).

This, of course, does not mean that courts, either Federal or State, desire to protect obscenity. It does mean that the Supreme Court has decided that lest the non-obscene and the constitutionally protected be suppressed it is better that some judicial officer—in cases arising as this one did we think preferably a State judicial officer—first after hearing competent evidence judicially determine that the challenged matter is obscene before its seizure. Nor is it any reflection upon law enforcement officers who deserve our thanks and support in greater measure than sometimes received to suggest that a judicial officer trained in the process of weighing evidence and making decisions is better equipped than they to pass upon the important and sometimes difficult question of obscenity. This is so because "The separation of legitimate from illegitimate speech calls for * * * sensitive tools * * *." Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L. Ed.2d 1460, 1472 (1958).

We must decline the request to enjoin the State Court prosecution and the request to enjoin the District Attorney from attempting to use the film or copies thereof as evidence. Our declination rests we think upon a firm foundation. We need not in this case explore fully the depth and breadth of 28 U.S. C.A. § 2283, which says:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. June 25, 1948, c. 646, 62 Stat. 968."

We need not here inquire as to the bare power of a court of the United States to enjoin proceedings in a State Court. It has been held that in certain narrowly defined areas such power exists. Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965); Machesky v. Bizzell, 5 Cir.1969, 414 F.2d 283; Sheridan and Townley v. Garrison, 5 Cir.1969, 415 F.2d 699. Nor need we attempt here to answer the apparently heretofore unanswered question whether 42 U.S.C.A. § 1983 is an express exception to § 2283. Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715; Cameron v. Johnson, 390 U.S. 611, 613, 88 S.Ct. 1335, 20 L.Ed.2d 182, 186, Footnote 3 (1968). This anti-injunction statute, 28 U.S.C.A. § 2283, regardless of the ultimate extent of its reach is at least and unquestionably a rule of comity. It evidences the historic concern of Congress over "the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law * * *." Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138, 142 (1951). We may go back even further than that. There is a maxim that equity will not enjoin a criminal prosecution. The maxim obtains generally even as between courts of equity and courts of law performing under the same sovereign and it "summarizes centuries of weighty experience in Anglo-American law." *Stefanelli, supra,* at 120, 72 S.Ct. at 120. Moreover, this maxim "is impressively reinforced when not merely the relations between coordinate courts but between coordinate political authorities are in issue." *Stefanelli, supra,* at 120, 72 S. Ct. at 120. For the purpose of this case we may lay to one side such cases as Dombrowski v. Pfister, *supra;* Machesky v. Bizzell, *supra,* and Sheridan and Townley v. Garrison, *supra,* because each of them dealt with important First Amendment *public* rights such as free speech or debate, and in the case of Sheridan and Townley v. Garrison, *supra,* the right of news media to report to the public concerning court proceedings. For an identification of the type First Amendment *public* rights protectible under certain circumstances in the United States courts even to the extent of enjoining State proceedings, see Machesky v. Bizzell, *supra;* Sheridan and Townley v. Garrison, *supra;* Dombrowski v. Pfister, *supra,* and Cato v. State of Georgia et al., 302 F. Supp. 1143 [N.D.Ga., June 5, 1969] (3 Judge Court). No important *public* in-

terests as were involved in *Dombrowski, supra,* or *Machesky, supra,* or *Sheridan and Townley, supra,* are involved in this case. The interests sought to be protected here lie on the private and commercial side, the right to exhibit a film for commercial reasons, for profit to the exhibitors and entertainment to the viewers. As Cato v. State of Georgia et al., *supra,* involved "run-of-mine gambling cases", this case involves a run-of-mine obscenity case.

We are dealing here with some "still developing aspect[s] of constitutional law," Jacobellis v. Ohio, 378 U.S. 184, 203, 84 S.Ct. 1676, 1686, 12 L.Ed.2d 793, 807 (1964) (Harlan, J., dissenting), though as to some of these aspects the development has progressed by leaps and bounds. For instance, in 1915, in Mutual Film Corp. v. Industrial Comm., 236 U.S. 230, 244, 35 S.Ct. 387, 391, 59 L.Ed. 552, 560, the Supreme Court held:

"It cannot be put out of view that the exhibition of moving pictures is a business, pure and simple, originated and conducted for profit, like other spectacles, not to be regarded, nor intended to be regarded by the Ohio Constitution, we think, as part of the press of the country, or as organs of public opinion."

But in 1952 in Burstyn, Inc. v. Wilson, 343 U.S. 495, 502, 72 S.Ct. 777, 781, 96 L.Ed. 1098, 1106, the Court developed the law to this point:

"For the foregoing reasons, we conclude that expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments. To the extent that language in the opinion in Mutual Film Corp. v. Industrial Comm., supra, [236 U.S. 230, 35 S.Ct. 387, 59 L.Ed. 552, Ann. Cas.1916C, 296,] is out of harmony with the views here set forth, we no longer adhere to it."

Then in Kingsley Intern. Pictures Corp. v. Regents of University of N. Y., 360 U.S. 684, 690, 79 S.Ct. 1362, 1366, 3 L.Ed. 2d 1512, 1517 (1959), the Court "reaffirm[ed] that motion pictures are within the First and Fourteenth Amendments' basic protection", and in Jacobellis v. Ohio, 378 U.S. 184, 187, 84 S.Ct. 1676, 1677, 12 L.Ed.2d 793, 797, said again: "Motion pictures are within the ambit of the constitutional guarantees of freedom of speech and of the press." These holdings were repeated in Interstate Circuit v. Dallas, 390 U.S. 676, 682, 88 S.Ct. 1298, 20 L.Ed.2d 225, 231 (1968).

On the question of obscenity, however, —what it is, and how to cope with it— the law has not been able to attain such finality. The problem here is "to reconcile the right of the Nation and of the States to maintain a decent society and, on the other hand, the right of individuals to express themselves freely in accordance with the guarantees of the First and Fourteenth Amendments." Jacobellis v. Ohio, *supra,* 378 U.S. at 199, 84 S.Ct. at 1684 (Warren, C. J., dissenting). This particular aspect of constitutional law is so much in the "still developing" stage that between June 24, 1957, the date of *Roth, supra,* and April 22, 1968, the members of the Supreme Court have written fifty-five separate opinions in thirteen cases on the subject of obscenity and have not been able to agree upon what it is or how to cope with it. See interstate Circuit v. Dallas, 390 U.S. 676, 705, n. 1, 88 S.Ct. 1298, 20 L.Ed. 2d 225, 244 (April 22, 1968) (Harlan, J., dissenting).

Whatever meritorious First Amendment interests or rights [1] the plaintiffs might have in the public showing of "Vixen" beyond their right which we recognize to prevent or cause to be set aside a seizure of the film for obscenity absent a prior to seizure adversary hearing on the question of obscenity, such

1. "In all except rare instances, I venture to say, no substantial free-speech interest is at stake, given the right of the States to control obscenity." Interstate Circuit v. Dallas, 390 U.S. 676, 707, 88 S.Ct. 1298, 1316, 20 L.Ed.2d 225, 245 (1968) (Harlan, J., separate opinion).

interests or rights do not sufficiently equate with public interests and public rights "of transcendent value to all society, and not merely to those exercising their rights," *Dombrowski, supra,* 380 U.S. at 486, 85 S.Ct. at 1121, to require a federal court to disregard the principle of comity to the extent of enjoining a pending State court criminal prosecution, suppressing evidence therein, or passing upon the constitutionality of the statutes basic to the prosecution.

It is noteworthy that in *Dombrowski,* perhaps the leading authority for enjoining State proceedings in narrowly defined circumstances, the complaint alleged not only a patently and facially unconstitutional statute but that the prosecuting authorities were actually proceeding in bad faith without hope of success and for the purpose of harassment of the complaining parties to discourage them from asserting and attempting to vindicate constitutional rights. We have no such case here. The good faith of the defendants is conceded. The purpose of harassment is absent and the District Attorney for all that appears has high hopes of success if he is permitted to prove what he regards as the truth.

This case comes under the coverage of Douglas v. Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943) and Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951). The teaching of Douglas v. Jeannette, *supra,* is that "the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate,' " at 163, 63 S.Ct. at 881, and it teaches further that the injury "incidental to every criminal proceeding brought lawfully and in good faith" does not constitute such irreparable injury. At 164, 63 S.Ct. at 881. Such teaching was reaffirmed in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The above men-

tioned doctrines are, of course, based on the fact that State courts have the solemn responsibility equally with the Federal courts "to guard, enforce, and protect every right granted or secured by the constitution of the United States * * *." Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542, 546, and that any deprivation of such rights by a State court may be corrected by the Supreme Court of the United States. Douglas v. Jeannette, *supra,* 319 U.S. at 164, 63 S.Ct. 877. Thus the request to enjoin the State court prosecution will be denied, no case having been proven calling for overriding the principle of comity. Likewise the request to enjoin the use of the film or copies thereof as evidence will be denied. *Stefanelli, supra,* speaks forcefully here:

> "We hold that the federal courts should refuse to intervene in State criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure." At 120 of 342 U.S., at 120 of 72 S.Ct.

And further on page 123, on page 121 of 72 S.Ct.:

> "The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities,

**1104**

which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution."

██ ██ This leaves only the request, added on the day of the trial by amendment to the complaint, for a declaratory judgment declaring the two above mentioned code sections unconstitutional. We follow the reasoning of *Cato, supra,* to the effect that Zwickler v. Koota, *supra,* is "limited to public rights as distinguished from mere private rights in the area of state criminal prosecutions" and that a Federal court is not required to pass on the constitutionality of the usual State criminal statutes at the request of defendants being prosecuted in State courts. No reason appears why the State courts should not be left with the freedom and the responsibility of interpreting and passing upon the constitutionality of State statutes in absence of a necessity for Federal courts to act "to protect some overriding federally guaranteed rights * * *." Malone v. Emmet, 278 F.Supp. 193 at 200 (D.C. Ala., 1967) and where the interests asserted are not "of transcendent value to all society" as distinguished from "those exercising their rights." *Dombrowski, supra,* 380 U.S. at 486, 85 S.Ct. at 1121. This conclusion consists with the fact that declaratory relief is not a matter of absolute right on the part of the litigant but rests in the sound legal discretion of the Court. Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291, 294 (1952).

Accordingly, it is hereby ordered that the defendants return said film to the plaintiffs immediately upon the plaintiffs' request therefor.

Ordered further that all other prayers of the complaint are hereby denied. Costs, if any, will be taxed against the defendants.