Jim E. MAY, Jr., and James E. McDonald,
Plaintiffs,

v.

Carl H. HARPER, County Solicitor for
Escambia County, Florida, Defendant.

Civ. A. No. 2145.

United States District Court
N. D. Florida,
Pensacola Division.

Nov. 28, 1969.

Paul Shimek, Jr., of Shimek & Mc-Graw, Pensacola, Fla., for plaintiffs.

Forsyth Caro, of Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, Fla., for defendant.

## MEMORANDUM DECISION

ARNOW, Chief Judge.

This matter is before the Court on Plaintiffs' application for preliminary injunction. The Defendant is the County Solicitor of Escambia County, Florida; Plaintiffs are engaged in the business of selling newspapers, magazines, books, periodicals and other printed matter to the general public in Pensacola, Escambia County, Florida.

Evidence has been taken and argument of counsel has been heard.

The Defendant, on October 1, 1969, called a meeting of all newsstand operators, book dealers and certain law enforcement officials in Pensacola, Florida, for the purpose of discussing the control of allegedly obscene materials being distributed in Pensacola, and of advising them of the procedures he felt should be followed and the course of action he proposed to follow.

During the conference, he advised them, as Plaintiffs allege, that if a dealer sold a particular book, magazine or periodical that was later determined in an adversary judicial hearing to be obscene, the dealer would be subject to prosecution for its sale prior to that hearing, and he intended to prosecute for any such sales.

Plaintiffs, in paragraph 6 of the amended complaint, also present the following allegations:

"At said meeting said Defendant declared that the dealers must *voluntarily* cease distribution and sale of all materials of 'questionable obscene character,' and if such action was not taken voluntarily, said Defendant would bring an action to have certain materials declared obscene and thereafter bring a criminal action against those not so acting voluntarily in accordance with his dictate. That Defendant has publically announced that it is his intention to clean up the City of Pensacola of all that material that he in his opinion believes to be obscene."

Plaintiffs contend the action of the Defendant in calling the meeting attended by law enforcement officers, newsstand operators, book dealers and others, and his conduct at that meeting, constitute informal censorship of the kind proscribed by Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The evidence falls far short of establishing that it was.

Mr. Harper's testimony, uncontradicted by any other evidence, was that he believed at least some book sellers thought they could, under recent decisions of

various courts, including one of this court, legally sell obscenity, and he wanted to point out their error. At the same time, he wanted to advise law officials respecting the procedure they must follow in order to comply with legal requirements in obscenity matters.

That his belief was justified is supported by the evidence—at least one book seller testified he believed, before the meeting, he could legally sell obscenity.

Nor did Mr. Harper threaten them with prosecution, as alleged in paragraph 6 of the complaint—the evidence negates these allegations.

That Defendant advised them of his proposed course of action, standing alone, does not "chill" or violate Plaintiffs' constitutional rights. The possibility of criminal prosecution for law violation is always present; that it, standing alone, serves as some deterrent to law violation obviously violates no constitutional rights.

■ Bantam Books teaches that a consultation genuinely undertaken by a law enforcement officer for the purpose of aiding the distributor to comply with law and avoid prosecution under it does not retard the full enjoyment of First Amendment freedoms. And that is here the case. That Defendant gave publicity to the meeting, in an endeavor to make sure all distributors were apprised of it, does not detract from its genuineness nor its laudable purpose. That as a result these Plaintiffs, and others, may have become apprehensive—with one, for example, now complaining he had tried to get Defendant to be his censor and tell him what books he could not sell, but that Defendant had refused—does not mean there is here violation of their constitutional rights.

Plaintiffs present also another and more serious contention. Defendant has announced that, if a dealer had been selling a particular publication, and if that publication was subsequently, in an adversary judicial proceeding, declared obscene, the dealer would be prosecuted for having sold the publication during the period of time preceding the judicial determination. Plaintiffs point out this means they sell matters at their peril, and at the risk of criminal prosecution. They argue their First Amendment rights are thereby "chilled" unconstitutionally, and contend they may not be prosecuted for the sale of any matter, regardless of its obscenity, unless such sale is made after adversary hearing and judicial determination of its obscenity.

■ Plaintiffs frankly concede before the Court they know of no case, nor does the Court know of any case, that goes as far as they contend. Instead, Plaintiffs contend such is the logical and required extension of the requirement of adversary hearing and judicial determination of obscenity before its seizure or use as evidence.

This Court rejects that argument.

■ Obscenity is not within the area of constitutionally protected speech or press. (Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969)). Plaintiffs' argument begs that fact.

■ Florida possesses the power to prevent distribution of obscene matter (Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959)), although, of course, its regulation of obscenity must "conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, supra. From the evidence before this Court, neither Florida's procedures, nor the proposed procedural action of the Defendant, violate that requirement.

■ Florida possibly might have provided for prosecution for obscenity only if sale was made after it was judicially determined to be obscene, but Florida did not do so. Instead, she chose to make the sale of obscenity, whether

before or after such judicial determination, illegal, and that she had the constitutional right to do. Published matter is made no less, and no more, obscene by the hearing. It is not changed by the hearing; the hearing, protecting First Amendment rights, only determines whether one may be prosecuted for its sale.

The courts go a long way, and properly so, in protecting and safeguarding First Amendment rights. But no one, by virtue of First Amendment or any other rights, may be above the law. The law here forbids the sale of obscenity; no one, under color of "chilling" of First Amendment rights, or other constitutional rights, may be allowed to violate that law.

The courts, struggling with obscenity problems, have adopted the vehicle of adversary hearing and judicial determination to safeguard the unobstructed circulation of non-obscene matter. That they have done so does not, and should not, mean the sale of obscenity contrary to law before that determination is constitutionally immunized. Just as all citizens must comply and, indeed, should seek to comply, with the law, so should these Plaintiffs. They know, or can obtain legal advice concerning, the tests laid down in the courts' decisions for obscenity determination. Certainly the bulk of the matter they sell will be clearly non-obscene or obscene; their rights are not "chilled" by the practical fact that, on doubtful matter, they may have to choose among refraining from selling, obtaining judicial determination of non-obscenity before selling, or selling at the risk of prosecution.[1] Respect for law, and the rule of law, requires no less. They are no more able to sell obscenity with impunity, claiming First Amendment rights, than would one guilty of libel or slander be able to maintain he could not be held liable for the consequence of his action because his action,

when committed, had not been judicially determined not protected by the First Amendment.

The holding of the Court in A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and other cases, is that any restraints on the distribution of publications on the ground they are obscene can only be imposed after an adversary judicial proceeding on the question of obscenity. That requirement is fully met by Defendant's announced procedure here; he intends no prosecution unless and until matter is so determined to be obscene.

Nor does it appear from the evidence the adversary judicial hearing he proposes will be conducted in any way contrary to law or that matter by any of them determined to be obscene will be used in violation of Plaintiffs' constitutional rights.

Neither the evidence here presented, nor the law, justifies the preliminary injunction sought. An order denying it will be entered.

---

[1]. If this be self-censorship, it is not, under the evidence here, compelled by the state. As pointed out in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.

Ed.2d 205 (1959), doubtless any form of criminal obscenity statute will induce some tendency to self-censorship.