**Harold PORTER, Plaintiff,**

v.

**Herbert B. KIMZEY, District Attorney Mountain Circuit, Grady F. Crocker, Sheriff of Habersham County, Clyde W. Simmons, R. L. Hansard, Edward C. Taylor, Billy S. Langley, Sr., and E. B. Caldwell.**

**Civ. A. No. 1291.**

United States District Court,
N. D. Georgia,
Gainesville Division.

Feb. 6, 1970.

Albert M. Horn, Orinda D. Evans, Atlanta, Ga., for plaintiff.

**994**

Robert B. Thompson, Weymon H. Forrester, Gainesville, Ga., Courtney Wilder Stanton, Atlanta, Ga., for defendants.

Before MORGAN, Circuit Judge, and SMITH and HENDERSON, District Judges.

PER CURIAM.

The three-judge feature of this case involves a facial attack on the constitutionality of a Georgia statute, under which the plaintiff was arrested following public criticism of certain personnel at a unit of the Georgia Department of Corrections where he had been employed as a guard. He seeks to enjoin any indictment or prosecution under the arrest warrant issued on the complaint of private individuals named in his statement charging him with a violation of Georiga Code § 26–2804, "Criminal defamation", which provides:

> "A person commits criminal defamation when, without privilege to do so and with intent to defame another, living or dead, he communicates false matter which tends to blacken the memory of any one who is dead or which exposes one who is alive to hatred, contempt, or ridicule, and which tends to provoke a breach of the peace. A person convicted of criminal defamation shall be punished as for a misdemeanor."

The complaints of plaintiff are twofold; namely that the provisions of the section are (1) overly broad, vague and ambiguous and (2) that they represent a prohibited abridgment of the right of free speech under the First Amendment.

This case represents another in an ever increasing series of actions wherein the jurisdiction of three-judge federal courts is invoked to test the validity of state statutes and to enjoin pending state prosecutions thereunder. The threshold question is whether it constitutes one of the "rare exceptions" authorizing such intervention contrary to the provisions of 28 U.S.C.A. § 2283, the anti-injunction statute.

Only a few years ago, such a procedure was unheard of as any accused had ample opportunity to vindicate his constitutional rights by way of defense in the state proceedings and comity considerations led Congress and the courts to avoid interference with the exhaustion of all state remedies. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1942); Chaffee v. Johnson, 352 F.2d 514 (5th Cir. 1965, affirming 229 F.Supp. 445). The jurisdictional source of this action is claimed to be founded on the now celebrated case of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), which authorizes the issuance of injunctive relief under certain circumstances where there is a facial attack on a state statute the enforcement of which arguably chills a First Amendment right. From this fountainhead has sprung a torrent of litigation attacking state statutes and municipal ordinances not only on First Amendment grounds, but on any other conceivable constitutional grounds, and seeking to enjoin state prosecutions on such basis.

In wrestling with Dombrowski, the scope of which is still somewhat in doubt, it has been concluded that, even in the case of an alleged bad faith prosecution by state officials directed against the public and political exercise of First Amendment rights, the decision does not permit wholesale attacks on any state statute or state prosecution.[1]

---

1. This does not mean that the constitutionality of state criminal statutes may not be decided by federal courts on habeas corpus (e. g., Wilson v. Gooding, 303 F. Supp. 952 (N.D.Ga.1969)) or by way of declaratory judgment in certain instances (e. g., Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Hunter v. Allen, 286 F.Supp. 830 (N.D. Ga.1968)), or that injunctions may not issue in actions by the United States proceeding under special statutes not proscribed by 28 U.S.C.A. § 2283 (e. g., United States v. Wood, 295 F.2d 772 (5th Cir. 1961)) or in aid of the court's order. (e. g., Landry v. Daley, 288 F.Supp. 189 (1968).

First and foremost, the prosecution or threat itself must be founded on a statute which on its face, at least arguably, affects First Amendment rights. *E. g.*, Carmichael v. Allen, 267 F.Supp. 985 (N.D.Ga.1967) (Three-judge). There must be a "nexus" between the right sought to be protected and the right ostensibly restricted by the statute. Compare the requisites of standing set out in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). To cite an extreme example, *Dombrowski* could not be used to enjoin a state prosecution for the offense of rape, murder, or the like, the ingredients of which are unconnected with First Amendment rights, on the grounds that the statute was vague or on procedural matters or that it is being used to chill First Amendment rights. *See* Bokulich v. Jury Commissioners of Green County, 394 U.S. 97, 89 S.Ct. 767, 22 L.Ed.2d 109 (1969); Dameron v. Harson, 364 F.2d 991 (5th Cir. 1966), affirming 255 F.Supp. 533; Cato v. State of Georgia, 302 F.Supp. 1143 (N.D.Ga. June, 1969) (Three-judge). Thus, the door is not open to all who would test the validity of state statutes or conduct a federally supervised pre-trial of a state prosecution by the simple expedient of alleging that the prosecution somehow affects First Amendment rights. The constitutionality of state statutes is properly a question for the state courts initially.

Even for First Amendment rights, *Dombrowski*-oriented proceedings are clearly limited to those instances wherein (a) "statutes are justifiably attacked on their face as abridging free expression" or "there is bad faith harassment by state officials with no intention of pressing the charges or with no expectation of obtaining convictions, knowing that the conduct did not violate the statute." Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1967). (There is no evidence of the latter here.)

■ To these limitations must also be added the need to vindicate some transcendent public right affecting masses of the populace in the exercise of their First Amendment rights. Thus, "Federal interference with a State's good-faith administration of its criminal laws 'is peculiarly inconsistent with our federal framework' and a showing of *special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith* is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction." Cameron v. Johnson, *supra* at 618, 88 S.Ct. at 1339; Macheský v. Bizzell, 5 Cir., 414 F.2d 283 (1969). *E. g.*, Carter v. Gautier, 305 F.Supp. 1098 (No. 2422, Sept., 1969, M.D.Ga.) (Three-judge); Gable v. Jenkins, 309 F.Supp. 998 (Oct., 1969, N.D.Ga.) (Three-judge). Thus, the successful applications of *Dombrowski* have occurred when there has been a chilling effect on the exercise of First Amendment rights, principally in the political and racial arena, by organized groups or representatives thereof and the state action affects the rights of many and not a single or a few accuseds. *E. g.*, Cameron v Johnson, *supra*; Carmichael v. Allen, *supra*; Landry v. Daley, 280 F.Supp. 939 (N.D.Ill.1968), appeal dismissed 393 U.S. 220, 89 S.Ct. 455, 21 L.Ed.2d 392 (1968) (injunction issued separately. 288 F. Supp. 200, 204 n. 14). Even then, the power may be sparingly exercised. See Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964).

■ Tested by the above, the instant action must fail on two counts. First, it involves only a single individual who has been arrested and accused under the statute. The prosecution affects him and him alone and not a group seeking to exercise some broad right of freedom of speech. Obviously, the plaintiff does not represent a class under Rule 23(a). There is no showing that the class is numerous or that the claims are typical or any of the other requisites thereunder. See generally Wilson v. Kelley, 294 F. Supp. 1005 at 1010 (II) (N.D.Ga.1968) (Three-judge). While the court recognizes the interest of the public in all the operations of government and encour-

ages discussion of the same, this is not such a "public right" or such "special circumstances" as are envisioned by *Dombrowski* and *Cameron*. Secondly, the arrest here is based upon a private warrant taken out by one citizen of the state against another. It is not founded on an organized effort at law enforcement or harassment by public officials. As such, the accused's rights are amply safeguarded by Grand Jury action, by his ability to raise his constitutional issues in the state court, and by the many defenses available on the merits. We do not think such a private disagreement

warrants intervention of the power of the federal courts. The strains on federal-state relationships are already many and the burden on the federal courts already heavy.[2] Suits for malicious prosecution provide an ample vehicle for the vindication of such private rights in the event of any abuse.

■■ For the reasons stated, it is therefore concluded that the action does not lie and the motions to dismiss insofar as they relate to the three-judge issue are granted.[3]

It is so ordered.

2. Actions of this type have quadrupled in the district during the past twelve months.

3. While such results render it unnecessary to reach the merits, we are constrained to comment thereon by way of dicta. While they clearly relate to freedom of expression, statutes punishing criminal libel are not per se violative of the First Amendment. Beauharnais v. Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952). They may be adopted and enforced for the reason that libelous utterances are not within the area of constitutionally protected speech. The problem, however, is whether the provisions of any such statute are precise and objective enough to "delineate its reach in words of common understanding," or whether it is "so vague that men of of common intelligence must necessarily guess at its meaning and differ as to its application." The former are valid, the latter are not.

A careful reading of the statute and the comment of the revisors of the new Criminal Code, of which this section is a part, convinces the court that, in the main, the statute is enforceable. Thus, it clearly preserves all civil defenses, privileged communications, and meets the requisites of actual malice toward public officials found in such cases as New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963) and Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). On such basis, that portion of § 26–2804 which provides that "a person commits criminal defamation when, without privilege to do so and with intent to defame another, living or dead, he communicates

false matter which tends to blacken the memory of one who is dead or which exposes one who is alive to hatred, contempt or ridicule" appears to be sound and within constitutional limitations.

However, the statute goes on and adds in the conjunctive "and which tends to provoke a breach of the peace." From the revisors' comment, it appears that the purpose was to limit public interest in such matters only to such defamations as threatened disorder and, therefore, affected the state's interest. Be that as it may, one of the more uncertain phrases of the law was thereby brought into play. Standing by itself, there is considerable doubt of its constitutionality. See Terminello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1940); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1963); Ashton v. Kentucky, 384 U.S. 195, 200, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1965); Wilson v. Gooding, 303 F.Supp. 952 (N.D.Ga. 1969). However, when such standard is coupled with other conduct, a good argument can be advanced for its efficacy. See Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 267 (1942); Williams v. District of Columbia, 419 F. 2d 638 (D.C.Cir. June 20, 1969). Had the statute been passed in the disjunctive, a court could remove the doubtful language and uphold the remainder. However, it is not. Whether the first part can sustain the latter is, as seen, a question for decision at some time before the proper court.