**CITY NEWS CENTER, INC., a body corporate of the State of Florida, etc., Petitioner,**

v.

**Dale CARSON, in his capacity as Sheriff for the City of Jacksonville and Duval County, Florida, et al., Respondents.**

Civ. No. 69–268.

United States District Court, M. D. Florida, Jacksonville Division.

Feb. 25, 1970.

Robert Eugene Smith, Towson, Md., and Norman J. Abood, Jacksonville, Fla., for petitioner.

David U. Tumin, Asst. Counsel, Jacksonville, Fla., for respondents.

PRELIMINARY INJUNCTION

WILLIAM A. McRAE, Jr., District Judge.

■ This is an action seeking damages and injunctive relief under 42 U.S.C. § 1983 from the enforcement of the Florida obscenity statute, section 847.-011, in an unconstitutional manner. In addition, petitioner seeks a declaratory judgment, under 28 U.S.C. § 2201, that the Florida statute is unconstitutional as applied.[1] Jurisdiction is based on 28 U.S.C. §§ 1331, 1343(3), (4).

This Court finds that because a prior adversary hearing was not held, a preliminary injunction should issue, and that the materials seized or purchased should be returned and suppressed from use in pending or future prosecutions arising from the events of April 10, 1969.

A temporary restraining order was entered April 17, 1969, reported at 298 F.Supp. 706 (M.D.Fla., 1969), and an evidentiary hearing was held May 14, 1969, on petitioner's motion for a preliminary injunction and upon the respondents' motions to dismiss and to stay this action.

*Findings of Fact*

The testimony taken at the May hearin coincides with the reported facts at 298 F.Supp. 706, with additions as follows: Officer John T. Bowman, who made the purchase of the two magazines, had been an investigator for the vice division of the sheriff's office only three weeks at the time of the seizure. He had

---

1. A three-judge court is not required since only the application of the statute is contested. *E. g.*, Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir., 1969), cert. denied, 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (Dec. 16, 1969). The constitutionality of the statute on its face will be considered in Meyer v. Austin, No. 69–678–Civ–J (M.D.Fla., argued Jan. 17, 1970, before Simpson, McRae, Young, JJ.)

not been briefed on constitutional standards of obscenity by police or legal personnel. Instead, his test as to what was obscene was whether private organs were exposed in a "suggestive" or "lewd and lascivious manner." Having seen a copy of "Male Swinger" which had been bought earlier by Sergeant Pfeiffer, he judged it to be obscene without inspection other than to note the single male nude on the cover. Other magazines were found by the officer to be obscene or not obscene in comparison to that magazine or by the "suggestiveness" of sexual acts in the pictures. In some instances, "suggestiveness" of sexual relationships was found when one individual was portrayed. Sergeant Carl V. Frazier had been to the room in petitioner's store to see the merchandise two days before the raid, but no arrest warrant or search warrant had been obtained prior to the seizure. No complaints were known to Sergeant Frazier except from Sergeant Pfeiffer. An arrest warrant was obtained from a justice of the peace only after the arrest and seizure.

No allegation is made that sales were made to children or that children had been in the room set apart for adults and

marked accordingly. See Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). Admission to the room was regulated by an attendant at the door. No allegation is made that pandering or obtrusion on the sensibilities of those adults not wishing to encounter such material occurred. See Redrup v. New York, 386 U.S. 767, 87 S. Ct. 1414, 18 L.Ed.2d 515 (1967).

In accordance with the findings above and those facts reported at 298 F.Supp. 706, this Court finds that the seizures were made in bad faith [2] and for the purpose of suppressing the seized materials during at least the period of prosecution, thereby chilling the public's right to freedom of expression and to receive information, see Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass., Nov. 28, 1969), injunction stayed, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447, 486 (Dec. 15, 1969) appeal taken, No. 1149, 38 U.S.L.W. 3302 (U.S. Feb. 4, 1970); United States v. Thirty-Seven Photographs, 309 F.Supp. 36 (D. C.Cal. Jan. 27, 1970), and depriving petitioner of its rights to fundamental due process as discussed below.

---

2. A Florida state court decision indicated that the procedures followed here were inadequate in 1967, Felton v. City of Pensacola, 200 So.2d 842 (1st Fla.App. 1967), rev'd on other grounds, 390 U.S. 340, 88 S.Ct. 1098, 19 L.Ed.2d 1220 (1968); the United States Supreme Court has made itself clear in this regard in Marcus v. Search Warrants, etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), and A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

This Court observes, however, that since the time of this bad-faith seizure, law enforcement officials in Jacksonville have gradually recognized the constitutional requirements in this area of the law. In the case of Mandell v. Carson, 309 F.Supp. 326 (M.D.Fla., temporary restraining order filed Oct. 8, 1969), a seizure was attempted of a film after a circuit court judge, upon considering affidavits of police officers and other citizens who had viewed the film, issued a search warrant and criminal summons.

Following the temporary restraining order of this Court for failure to provide a prior adversary hearing, an attempt was made by the State to have such a hearing (subsequently that hearing was brought to this Court by a petition for removal on diversity grounds, as Florida ex rel. Austin v. Mandell, No. 69–679–Civ–J). Before that hearing was had, an attack on the Florida obscenity statute was heard in the companion case of Meyer v. Austin, No. 69–678–Civ–J, by a three-judge district court. Finally, in the case of Lake City Cinema, Inc. v. Austin, No. 70–15–Civ–J (M.D.Fla., temporary restraining order filed Jan. 13, 1970 pending the outcome in Meyer v. Austin, supra), the law enforcement officials for the first time initially attempted to abide by the constitutional requirements of a prior adversary hearing in state court. In Lake City, the defendants acted in good faith and with regard to protection of that plaintiff's first amendment and due process rights.

*Need for a Prior Adversary Hearing*

█ The seizures made here were in flagrant disregard of the constitutional requirements of due process of law which require a prior adversary, judicially-supervised hearing before seizure. Without this threshold protection, the evanescent freedom of unintimidated expression, guaranteed by the Bill of Rights, becomes meaningless. The great weight of authority now requires a prior evidentiary hearing in all cases regarding seizure of alleged obscenity, whether films or books. Among those cases so holding are, for example, A Quantity of Copies of Books v. Kansas, *supra*; Marcus v. Search Warrants, etc. *supra*; Tyrone, Inc. v. Wilkinson, *supra*; Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Drive In Theatres, Inc. v. Huskey, 305 F.Supp. 1232 (W.D.N.C., 1969); Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La., 1969) (3 judge court), appeal taken sub nom., Perez v. Ledesma, No. 837, 38 U.S.L.W. 3282 (Jan. 27, 1970); Morrison v. Wilson, 307 F.Supp. 196 (N.D.Fla., filed Dec. 5, 1969) (final order of 3 judge court); May v. Harper, 306 F.Supp. 1222 (N.D. Fla., Nov. 28, 1969); City News Center, Inc. v. Carson, 298 F.Supp. 706 (M.D. Fla., 1969) (McRae, J.), (temporary restraining order); Anderson v. Carlton, No. 68–1392–Civ–CA (S.D.Fla., decided Dec. 16, 1968) (Atkins, J.); Poulos v. Rucker, 288 F.Supp. 305 (D.Ala., 1968); United States v. Brown, 274 F.Supp. 561 (S.D.N.Y., 1967); Flack v. Municipal Ct. for Anaheim-Fullerton Judicial Dist., 66 Cal.2d 981, 59 Cal.Rptr. 872, 877, 429 P. 2d 192, 197 (1967) (en banc); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969) (single print of film seized); HMH Publishing Co. v. Oldham, 306 F.Supp. 495 (M.D.Fla., filed Oct. 15, 1969); Leslie Tobin Imports Inc. v. Rizzo, 305 F.Supp. 1135 (E.D.Pa.,

filed Nov. 24, 1969); Pennsylvania v. Guild Theatre, Inc., 432 Pa. 378, 248 A. 2d 45 (1968); and thirteen other cases collected in Carroll v. City of Orlando, 311 F.Supp. 967, (M.D.Fla., filed Feb. 18, 1970) (3 judge court) (seizure of single print of film) (also citing cases ruling to the contrary).

### Prior Adversary Hearing Needed For Finding Probable Cause Before Arrest

Respondents make the contention that the seizures made here were incident to an arrest for the act of selling obscene materials, which alleged illegal act took place in the presence of the arresting officer.[3] In making such an arrest, the officer necessarily was placed in the position of having to determine probable cause that the materials being sold were in fact obscene before the arrest could be made. An ad hoc determination of obscenity by a single officer, uninformed by no more than three weeks experience with the vice squad and unfamiliar, by study or briefing, with constitutional principles is grossly insufficient to protect against unwarranted infringement of freedom of expression.

Even with the benefit of experience and briefing on the law, such a procedure would be inadequate because probable cause as to whether obscenity exists has come to be recognized as a matter of *constitutional judgment,* unique in the law because of the fragile nature of the right protected, and incapable of determination by a policeman, grand jury, or judge acting *ex parte*, without a prior finding of probable cause in a judicially-supervised adversary hearing. *See, e. g.,* Central Agency, Inc. v. Brown, 306 F. Supp. 502 (N.D.Ga.1969); New York v. Saka, No. 94/68 (Dutchess County Court, New York, filed Feb. 7, 1969) (dismissal of grand jury indictment be-

---

3. Such an arrest may be made under Fla. Stat. § 901.15 (1967), F.S.A.; seizure incident to an arrest is authorized under Fla.Stat. §§ 901.21, 847.03 (1967), F.S.A. The arrest warrant, issued after the arrest, charged that the petitioner's agent

made the sale "of obscene material, * * * manifestly intending [*sic*] to the corruption of the morals of youth." It is undisputed that no children were ever permitted access to the room in which the seized items were located.

cause no prior adversary hearing had been had). [Since this opinion was rendered, the United States Supreme Court has affirmed, without opinion, the three judge panel decision in Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), aff'd 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (U.S. S.Ct. Feb. 27, 1970). Not only is that case distinguishable in that it dealt only with an arrest and not an arrest and seizure, but more importantly, that decision rests primarily on the "several months" which passed before the filing of the federal suit, thus undercutting plaintiffs' claim for federal equitable relief.]

Not only would it be constitutionally impossible for a policeman to decide, under the conditions of this seizure, that probable cause existed to justify an arrest, the courts themselves have had great difficulty in deciding what is obscene, even after an adversary hearing. *E. g.*, United States v. 127,295 Copies of Magazines, etc., 295 F.Supp. 1186 (D.Md. 1968) ("The task [of applying constitutional standards of obscenity] is difficult because to us, as to most judges, the test which must be applied here, like the Peace of God, passeth all understanding.") To compound the imprecision of the tests in this delicate and important area, there is the apparent conflict between the lower courts' view of what facts meet the constitutional standards and that of the United States Supreme Court. *Compare, e. g.,* United States v. Potomac News Co., 373 F.2d 635 (4th Cir., 1967) (held that, viewed as a whole, the magazines appeal to the prurient interest of a sexually deviant group) and United States v. Central Magazine Sales, Ltd., 373 F.2d 633 (4th Cir., 1967) (held magazines "patently offensive" and sold with intent to exploit "prurient appeal") *with* Potomac News Co. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46 (1967) (reversing per curiam), and Central Magazine Sales, Ltd. v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L. Ed.2d 49 (1967) (reversing per curiam).

█ Consequently, because the delicate nature of the protected right makes the finding of probable cause a matter for constitutional judgment, a prior adversary hearing is necessary before an arrest can be made, even where the sale of allegedly illegal materials takes place in the presence of the arresting officer. Delta Book Distributors, Inc. v. Cronvich, *supra,* 304 F.Supp. at 667.

### Standing of Petitioner to Assert Constitutional Rights

█ In the present case, there is no natural person joined as petitioner who may assert first amendment rights of free expression. Hague v. C.I.O., 307 U.S. 496, 514, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (holding a corporation cannot assert privileges and immunities under the fourteenth amendment). Without deciding whether a corporation involved in the dissemination of information to the public has standing to assert the public right to receive constitutionally protected information, it is sufficient to find that City News Center, Inc., does have standing to assert claims of due process violations. *See* Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936). Failure to hold a prior adversary hearing before seizure violates the established standards of due process, and therefore gives petitioner standing to complain. Leslie Tobin Imports Inc. v. Rizzo, *supra.*

### Presence of a Sufficiently Significant Constitutional Violation to Overcome Comity and to Permit Injunctive Relief or Suppression and Return of Evidence

The decision in Carter v. Gautier, 305 F.Supp. 1098 (M.D.Ga., filed Sept. 15, 1969) (Bell, Elliott, JJ., with opinion for the court by Bootle, J.) (requiring a prior adversary hearing before seizure of obscenity, refusing to pass on the constitutionality of the Georgia obscenity statute or enjoin prosecution, but ordering the film seized returned), stated that a pending state criminal prosecution cannot be enjoined, or the evidence suppressed, or the constitutionality of the statutes involved passed upon in a case

where there is a commercial distributor as a party, as in the present case, for the reason that the right of free expression being exercised by the corporation is only a private, commercial right rather than a right of "transcendent value to all society," quoting Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965).

This public-private distinction was considered in detail in the earlier Fifth Circuit opinion of Machesky v. Bizzell, 414 F.2d 283 (1969) (regarding picketing) (opinion by Bell, J., for the court), in which it was held that 28 U.S.C. § 2283, the comity or "anti-injunction" statute, should not necessarily bar private parties from asserting *public* rights. *Machesky* held also:

> Numerous Supreme Court opinions attest to the the fact that *First Amendment rights are not private rights of the appellants so much as they are rights of the general public.* 'Those guarantees [of speech and press] are not for the benefit of the press so much as for all of us. * * *' [citations omitted and emphasis added].

The decision went on to stress the essentially *public* nature of the right of free expression, and the necessity in certain cases for overcoming the principles of comity embodied in § 2283. A month later, in Cato v. Georgia, 302 F.Supp. 1143 (N.D.Ga., 1969) (opinion by Bell for the court), the three-judge court properly declined to prevent injunctive relief to stop a state prosecution for operating a lottery where a wiretap was said to have been used, on the ground that the interest there was merely private and could be raised in defending the prosecution in Georgia's state courts.

■ Contrary to the reasoning of *Machesky,* Carter v. Gautier, *supra,* held that "private" and "commercial" first amendment rights could not support an injunction of a pending state court action, suppression of evidence, or a decision on the constitutionality of state statutes. A major basis for this result was that no irreparable injury had been demonstrated. However, in Sheridan v. Garrison, 415 F.2d 699 (5th Cir., 1969), cert. denied, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (Jan. 15, 1970), the Fifth Circuit held that where freedom of expression is at stake, any chilling effect on that expression, such as an improper obscenity prosecution, constituted irreparable injury per se. *Id.* at 705 of 415 F.2d. Moreover, commercial parties are inextricably involved in the production and distribution of much of the information now exchanged in our society, whether by television, radio, books, or newspapers. To deny these media standing to assert the public's interest in the free exchange of ideas and information, simply because they have a monetary interest, would be contrary to the fundamental purposes of the first amendment. Therefore, this Court follows *Machesky* in finding that the right asserted here is a *public* one and of paramount significance to the freedom of expression protected by the first amendment.

### Abstention

Respondents have urged that this Court abstain from ruling in the present case. In the area of free expression, the doctrine of abstention is greatly limited. *See* Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). We are convinced that "whatever advantages, if any, there may be in abstention are plainly outweighed by the dangers to free speech which might result from delay accompanying state proceedings." Bee See Books, Inc. v. Leary, 291 F.Supp. 622, 624 (S.D.N.Y., 1968).

■ Following the decisions in *Delta Book Distributors, Inc., supra,* and Carroll v. City of Orlando, *supra,* suppression of the materials seized from use in prosecutions arising from the events of April 10, 1969, is indicated[4] and they

4. The money paid for the two magazines bought by Officer Bowman was returned to the police, at their request, after the sale. Unless the purchase price is given to petitioner, the two magazines must also be returned.

must be returned. Injunctive relief to stop the prosecution of petitioner's agent Vallie Antonio Digregorio, will not be granted because he is not a party to this action and because, as was noted in *Delta Book Distributors, Inc., supra,* the prosecution will be effectively terminated by the suppression of the evidence.

Because this order deals with the procedures used and their legality, no consideration is given here to the factual question of whether the materials bought or seized were obscene. Those that the Court has seen would, in all likelihood, appeal only to puerile fantasies or those curious to plumb the depths of human insensitivity to that which is noble and enduring. The Supreme Court has seen fit, under the Constitution, to expect of the public a degree of maturity and discernment that will greet such offerings with the contempt and rejection they deserve, and, with consequent financial failure, they may be expected to diminish in number or disappear.

Nothing in this opinion should, however, be construed to prohibit a prosecution made in good faith under a constitutional statute where the requirements of due process designed to protect freedom of expression are adhered to. Nor should anything contained herein be construed as permitting obscene materials to be made available to children, or to be pandered to the public, or to intrude on the sensibilities of unwilling adults. Nor does this Court consider whether *scienter* can be proven for a sale which occurs before an adversary hearing and determination is had, or whether, in the alternative, one who sells books and magazines must do so at his own risk. *See* Delta Book Distributors, Inc., *supra,* 304 F.Supp. at 667. Finally, this Court does not here pass upon the merits of the Florida obscenity statute because only its application was contested, nor does

it consider whether petitioner may be prosecuted, under valid laws and procedures, for sales of the materials seized after April 10, 1969.

It is, therefore,

Ordered:

1. Respondents, their agents, servants, employees and attorneys, and all persons under their control or authority, in active concert or participation with them, are hereby enjoined from making further seizures, under color of State law, ordinances, regulations, custom or usage, of magazines, books, newspapers, or other publications, as well as movie film and the machines to display them, or from otherwise engaging in any conduct which might in any way interfere with petitioner, its agents, servants, or employees, in keeping for sale or selling books, magazines, newspapers, or other publications, or keeping coin-operated movie machines for viewing film, without first obtaining in any such case, after due notice, a judicially-supervised adversary hearing on the issue of obscenity of the materials sought to be condemned, until a hearing is held in this Court to determine the merits of the permanent injunction requested, and damages, if any.

2. Respondents are enjoined from further withholding the items seized on April 10, 1969, as listed in exhibit A of the complaint, and are ordered to return the items immediately to petitioner or its counsel.

3. Said materials seized or purchased on April 10, 1969, from petitioner are hereby suppressed as evidence in any pending or future prosecutions of petitioner, or its agents, arising out of the events of that date.

4. Jurisdiction is hereby retained for the issuance of such further orders as may be necessary and proper.