Robert MITCHUM and Clarence Cantey,
Plaintiffs,

v.

Thomas Jerry McAULEY et al.,
Defendants.

Civ. A. No. 789.

United States District Court,
N. D. Florida,
Marianna Division.

March 9, 1970.

**480**

Paul Shimek, Jr., Pensacola, Fla., for plaintiff.

Julius Parker, Jr., Raymond Markey, Asst. Atty. Gen., Gerald Mager, Tallahassee, Fla., and Mayo C. Johnston, Panama City, Fla., for defendants.

### ORDER

MIDDLEBROOKS, District Judge.

This cause came before this Court upon application by plaintiffs for temporary restraining order and injunction pursuant to Title 28, United States Code, Section 2284(3) to enjoin defendants from prosecuting all criminal actions pending against plaintiffs, to enjoin defendants from further arrests and harassment pursuant to their enforcement and execution of Panama City, Florida, City Ordinance Section 16–44 and Florida Statutes Sections 847.011 and 847.03, F.S.A., to enjoin defendants from further violation of those rights, privileges and immunities guaranteed to plaintiffs by the Constitution and laws of the United States, and to compel defendants to return instanter those materials seized during the course of those actions made the subject matter of this litigation. Counsel for the respective parties were present and heard.

Briefly, the facts of the case are stated as follows:

Plaintiff Clarence Cantey, an employee of plaintiff Robert Mitchum, was first arrested on February 24, 1970, for violation of Ordinance Section 16–44 and on February 25, 1970, he was again arrested by the city police department and again released on bond. Prior to the arrest made on February 25, 1970, plaintiffs' license to do business was revoked by the license inspector of Panama City. On February 27, 1970, plaintiffs filed their complaint in this Court. Upon advice of counsel plaintiffs restocked their store and reopened on February 28, 1970, and on this occasion plaintiff Cantey was arrested and taken into custody by the Bay County Sheriff's Department for violation of Florida Statute 847.-011(1) (a), F.S.A. for possession of obscene materials with intent to sell same and again released on bond. Returning to his store on the afternoon of February 28, plaintiff Cantey reopened for business and later that same evening was again arrested and taken into custody by the Bay County Sheriff's Department for violation of Florida Statute 847.011 and again released on bond. It is noted by this Court that at no time was there an independent determination of obscenity made in an adversary judicial proceeding prior to any of the arrests of plaintiff Cantey and seizures of materials.

This Court, fully aware of the statutory language contained in Title 28, United States Code, Section 2284(3) and the principles of equity governing issuance of injunctive relief pendente lite, cannot grant such relief without a showing of irreparable harm to plaintiffs. When this relief is sought to be applied

against pending state prosecutions, then this Court becomes doubly cautious in its exercise of its equity powers as the concept of comity dictates that the federal judiciary intervene in pending state action only in limited and extraordinary circumstances. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Only recently in a case involving a pending state criminal prosecution and where at issue was the alleged suppression of free speech, the Court of Appeals of the Fifth Circuit pronounced the following rule to be adhered to in such cases as the one sub judice:

> "In *Dombrowski* and cases of its nature, the substance of the complaint is exactly this: that state officials are using or threatening to use prosecutions, *regardless of their outcome,* as instrumentalities for the suppression of speech. Under these exceptional circumstances, and only under these circumstances, the preservation of the remedy created by § 1983 becomes inconsistent with the policy behind § 2283, and the prosecutions themselves may become the subjects of *Dombrowski* injunctions.

Sheridan v. Garrison, 415 F.2d 699, 706 (5th Cir. 1969), cert. den. 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (1970).

■■ In short, as this Court understands *Dombrowski* and its progeny, one must first show a bad-faith use and application of the state's legal resources for the ultimate purpose of inhibiting or curbing First Amendment rights and privileges. There is strong authority to support the position that the plaintiffs in such cases have a "heavy burden" to show that the state is not making a good faith effort in making an arrest and in commencing a prosecution. Cameron v. Johnson, 390 U.S. 611, 619 and 623, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1967). Presumptively, the state in the exercise of its police power is doing so for a legitimate end.

■ Stated otherwise, bad faith on the part of state officials may become manifest where arrests are made by the state solely to harass an individual with no intention of pressing the charges or with no expectation of obtaining a conviction. Ibid. at 619, 620, 88 S.Ct. 1335.

Necessarily flowing from this showing of bad faith is the probability of irreparable injury, the second element to be found in the *Dombrowski* formula. The underlying premise here is that there is no adequate state remedy to vindicate impairment of a First Amendment right wrought by the bad faith arrest and prosecution of an individual. Because of the inadequacy of the state procedures, a chilling effect on the exercise of First Amendment rights may occur and for this reason the probability of irreparable injury is generated. When the presence of these two factors coalesce, then one has a jurisdictional basis for application of the *Dombrowski* remedy. Sheridan v. Garrison, supra, at 709.

As thus stated the burden in this proceeding rested upon plaintiffs to show bad faith and the irreparable injury emanating therefrom. This Court is not at odds with the proposition that injunctive relief pendente lite may be granted where First Amendment freedoms are threatened with irreparable injury and no adequate state remedy is available. After having heard the testimony on both sides, however, this court is of the opinion that plaintiffs have failed to demonstrate bad faith on the part of the city and county officials and at the same time have failed to persuade the Court that irreparable injury will result if the pending state prosecutions are allowed to continue further.

It should be observed at the outset that the constitutionality of the particular statute challenged, Florida Statute 847.011, F.S.A. has only recently been upheld by the Florida Supreme Court in State v. Reese, 222 So.2d 732 (Fla.1969). Unlike the Louisiana statute which had not been reviewed by the Supreme Court of that state in the *Dombrowski* case, the particular statute now before this Court has been subjected to the careful

scrutiny of this state's highest court; consequently as this statute has withstood the constitutional assault made on its validity and application, one acting in pursuance of its enforcement cannot be said to have acted in bad faith for there had been no taint of illegality previously determined.

Plaintiffs' counsel initiated the hearing by calling several of the defendants as adverse witnesses. In his direct examination of them he elicited certain testimony which showed that no adversary adjudication of obscenity had been made prior to any of the arrests. Counsel then argued that their failure to hold a prior adversary hearing was in and of itself bad faith. He further argued that because the county prosecutor failed to hold a prior adversary hearing to determine the obscenity vel non of the seized material that this bad faith was compounded. Moreover, in alluding to the recent order in City News Center, Inc. v. Carson, 310 F.Supp. 1018 (M.D.Fla., 1970) which interpreted *Sheridan*, supra, as saying that failure to hold a prior adversary hearing constituted irreparable injury per se, plaintiffs' counsel felt he had established the presence of the two essential elements in the *Dombrowski* formula and that therefore the temporary restraining order should issue. This conclusion falters however when subjected to the deliberate and constrained reasoning of that body of federal law encompassing the First Amendment of the Constitution.

■ First this Court finds that contrary to the argument of plaintiffs, there has been no bad faith demonstrated. As was observed earlier, the police officials and legal officers named as defendants were merely enforcing the laws of the city and the state, a duty which evolved on them by virtue of their office. The statute under which the county prosecuted plaintiffs had only recently weathered a constitutional attack; the city ordinance which was the basis of the first two arrests was modeled after this Florida statute. Thus, as it appears to this Court that the defendants in the enforcement of the ordinance and statute now challenged in this litigation had every expectation of prosecuting those arrests until an ultimate conviction was obtained, this finding negates the presence of bad faith. In an effort to show that there was no hopelessness affixed to their motives, defendants identified and this Court allowed to be introduced for a limited purpose some of the items seized, not to demonstrate or show obscenity, but to show how the open exhibition in those publications of genitalia and erotic positioning of the models could lead a reasonable man to believe he was in good faith making a valid arrest and seizing obscene material and was not merely conducting a vendetta of harassment. Furthermore, the county prosecutor admitted that he had held no prior adversary hearing and when queried by plaintiffs' counsel as to why he had not, he responded that he was unaware as to any constitutional requirement that a prior adjudication of obscenity be made. As a further remonstrance of good faith, the county officials assured this Court that no further action would be taken without first having complied with these procedural requirements. Consequently, plaintiffs by their own initiative have shown that the county did not act in bad faith. Had the county prosecutor been aware of the constitutional prerequisites delineated in A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and in Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), and then with deliberate premeditation refused to comply with these mandates, bad faith might have been shown. Thus, as no bad faith or bad motive has been demonstrated but only a failure to keep abreast with the constant flux of the law in this area, the first essential ingredient in the *Dombrowski* formula is wanting.

■ Having thus concluded consideration of plaintiffs' argument that defendants acted in bad faith, this Court

now focuses its attention on plaintiffs' remaining argument that they have suffered and will continue to suffer irreparable harm unless a temporary restraining order issues.

Contrary to the opinion reached in *City News Center, Inc.,* supra, this Court is of the opinion that *Sheridan,* supra, held otherwise. On page 705 of *Sheridan,* supra, the Court of Appeals in interpreting *Dombrowski* said that "A severe chilling effect on the exercise of first amendment freedoms constitutes sufficient irreparable injury in and of itself * * *." But by continuing further the reader would have observed additional qualifying language to that statement on page 706:

"When a significant chilling effect on free speech is created by a *bad-faith prosecution* (emphasis added), the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome * * *."

Hence, because of this qualifying language, plaintiffs may not avail themselves of the language in *City News Center, Inc.,* supra, to show that irreparable injury was suffered by them.

■ This conclusion is buttressed by a more paramount, countervailing legal argument, viz., consideration of comity principles. In support of the position taken hereinafter, this Court would refer the reader to the articulately reasoned opinion of District Judge Frankel in Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969) (Three-Judge Court): motion to affirm granted per curiam, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78, 1970.

It may be plain from the facts as thus far stated that no effort was made by plaintiffs to vindicate their constitutional rights by employing available state remedies. Under the present Florida Rules of Criminal Procedure, Rule 1.-190(c), 33 F.S.A. in particular, plaintiffs could have easily availed themselves of a motion to dismiss and in the alternative, under Rule 1.190(h), of a motion to suppress evidence. Plaintiffs upon inquiry by this Court admitted that they intentionally by-passed available state procedural remedies because they felt their rights could not be vindicated in a state forum. The First District Court of Appeals, the district in which this Court happens to be geographically located and the district in which these plaintiffs reside, adhered to the pronouncements made in *Marcus,* supra, and *A Quantity of Books,* supra, in Felton v. City of Pensacola, 200 So.2d 842 (1st DCA 1967), reversed on other grounds, 390 U.S. 340, 88 S.Ct. 1098, 19 L.Ed.2d 1220 (1968), and iterated on page 845:

"The procedure used in the present case, in which the police officer merely used his 'own good judgment' in determining whether the publications were obscene, clearly contravened the guarantee of freedom of speech and the press in the First Amendment * * *."

■ Except where the scheme of remedies is so barren that inadequacy of the state procedure is manifest, *Dombrowski* relief is inappropriate. Tying in with what has been said above, this Court strengthens its argument with the following passage from *Dombrowski,* 380 U.S. at pages 484–485, 85 S.Ct. at page 1120:

"It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings."

Because of the declarations made in *Felton,* supra, there would appear to be the additional safeguard against "erroneous initial application" of constitutional standards in the Bay County, Florida, Courts so that plaintiffs cannot convince this Court that there was a legal basis for by-passing the available state remedy.

Intervention by the federal judiciary in state criminal proceedings constitutes one of the "rare exceptions" to the anti-injunction statute, Title 28, United States Code, Section 2283. The practical consideration resting behind this statute is abstention by the federal judiciary in light of comity considerations. Because of the increasing stream of litigation now confronting the federal courts, this Court is evermindful not to unravel the delicate balance existing between the state and federal judiciaries. These considerations were more fully amplified in Porter v. Kimzey, et al., 309 F.Supp. 993 (N.D.Ga.1970) (Three-Judge Court).

That state courts are competent forums to mete out justice is typified in the holdings of *Dombrowski,* supra *Milky Way Productions,* supra, and *Porter,* supra.

Appended to these lines of decisions is Karalexis v. Byrne, 306 F.Supp. 1363, (D.Mass., 1969), injunction stayed, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447 & 486 (1969). Justice Black, in concurring with the decision of the Court in staying an interlocutory injunction which restrained the prosecution of a pending state criminal obscenity action, made the following pronouncement:

"One of the fundamental aspects of our federal constitutional system requires that federal courts refrain from interfering in pending state criminal prosecutions except in highly unusual and very limited circumstances. I do not think the facts of this case present an occasion for departure from that general rule. * * *"

One final argument yet to be made in this Court's determination not to grant a temporary restraining order and to allow plaintiffs to seek redress in a state forum is found in this Court's considerations relative to procedures employed in habeas corpus proceedings. In those proceedings federal courts have utilized the doctrine of abstention to allow a petitioner to avail himself of all state remedies before permitting him to make use of a federal forum. Great reliance has been placed in the integrity of state criminal justice in these circumstances. The rationale of this doctrine is perhaps best defined in Fay v. Noia:

"But its rationale has not changed: 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation * * *. Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass on the matter. (Citation omitted.) The rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of powers.'" 372 U.S. 391 at 419, 420, 83 S.Ct. 822 at 838–840, 9 L.Ed.2d 837.

In those cases, the petitioner generally has already suffered a conviction and is under present incarceration. At stake is the petitioner's personal liberty as opposed to a proprietary interest similar to that of plaintiffs in this case at bar. Yet the Supreme Court of the United States in considering constitutional challenges raised by a petition for writ of habeas corpus has felt that no matter how critical the issues raised the principles of comity dictate that a state be given first opportunity to offer redress where the claim is meritorious.

In summary then it is the opinion of the Court that plaintiffs have demonstrated neither bad faith on part of the defendants nor irreparable injury or probability of irreparable injury because of some deficiency in the state criminal process. In the absence of any showing of some extraordinary circumstance which would merit the relief sought

here, the application for temporary restraining order must be denied.

It is therefore upon consideration hereby

Ordered:

Plaintiffs' application for temporary restraining order and injunction is denied.