THE STATE OF OHIO, APPELLANT, *v.* CORNETT ET AL., APPELLEES.

(Nos. 11653 to 11659, inclusive—Decided January 17, 1972.)

*Mr. Simon L. Leis, Jr.,* and *Mr. Fred J. Cartolano,* for appellant.

*Mr. Donald L. Weber,* for appellees.

SHANNON, J. These are appeals upon leaves first had on questions of law from orders of the Court of Common Pleas of Hamilton County, Ohio.

The defendant, appellees herein, were indicted by the grand jury of Hamilton County for the sale of obscene literature (R. C. 2905.34), each being charged in a separate indictment. Motions to quash and to abate these indictments, demurrers to the indictments and motions for summary dismissal were filed by defendants.

Appended to those pleadings was a statement of facts containing, *inter alia,* assertions that on July 27, 1970, an officer of the Cincinnati, Ohio, police entered the bookstore where defendants were employed, purchased one volume of a two-volume set entitled "Oral Sex and the Law," identified himself, arrested defendants and took them into custody. Defendants claim that the store was marked as an "adult bookstore," persons under the age of eighteen being barred therefrom and that "all materials dealing with sexual matter" were "segregated from the gaze of the general public."

The Court of Common Pleas ordered the indictments stricken and dismissed because the state failed to make a determination regarding the obscenity of the materials prior to the arrest and institution of criminal process. In its entry of dismissal, the court found specifically that: "the present state of law is that there is a constitutional requirement for the state to conduct an adversary hearing before a judicial officer for the purpose of determining the issue of claimed obscenity and that that judicial officer must find the material being litigated obscene in the constitutional sense before an individual can be arrested and a criminal prosecution instituted against such individual for violation of Section 2905.34 of the Revised Code of Ohio * * *."

It is from such orders that these appeals are taken. R. C. 2905.34 provides, in the part applicable here:

"No person shall knowingly sell * * * or offer to sell * * * an obscene, lewd or lascivious book * * *."

Is the enforcement of this statute abeyant until a

judicial officer in an adversary hearing determines the suspect material to be obscene, lewd or lascivious? While the court below found a constitutional requirement for such a hearing, we are not favored by specific reference to its foundation.

In the statement of facts accompanying the motions and demurrers, we find: "Defendant has applied for and has been granted injunctive relief by the United States District Court for the Southern District of Ohio, Western Division, from further arrest and institution of criminal process by the city of Cincinnati and its division of police, unless there first be held an adversary hearing on the question of claimed obscenity * * *."

Defendants have caused to be filed as an original paper a copy of the memorandum of decision and order in the unreported case of *Transamerica Graphart System, Inc.*, v. *Krabach*, No. 7602, United States District Court, Southern District of Ohio, Western Division, the case in which the injunctive relief above referred to was afforded. In that memoranda, the court noted: "There is no specific statutory authorization for a 'prior adversary hearing'" and then suggested alternative methods to satisfy "the constitutional requirement of a prior adversary hearing in connection with an arrest for obscenity."

Similarly, this court initiates its effort to resolve the issue with the observation that the legislature has not restricted or limited the enforcement of R. C. 2905.34. The strictures have been judicial.

In *Near* v. *Minnesota* (1931), 283 U. S. 697 at page 713, Chief Justice Hughes, delivering an opinion of the United States Supreme Court, dissented from by four associate justices, commented on a state statute providing for the abatement as a public nuisance of malicious, scandalous and defamatory newspapers, magazines or other periodical and stated:

"The question is whether a statute authorizing such proceedings in restraint of publication is consistent with the conception of the liberty of the press as historically conceived and guaranteed. In determining the extent of

the constitutional protection, it has been generally, if not universally, considered that it is the chief purpose of the guaranty to prevent previous restraints upon publication.''

But, some twenty-six years later, Justice Brennan, in *Roth* v. *United States* (1957), 354 U. S. 476, declared flatly, at page 485 of the opinion he delivered for the court: ''We hold that obscenity is not within the area of constitutionally protected speech or press.'' He emphasized parts of a quotation from *Chaplinsky* v. *New Hampshire,* 315 U. S. 568, 571-572:

''There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any constitutional problem. *These include the lewd and obscene* * * *. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality* * * *.''

Does, then, the finding of the Court of Common Pleas that there exists a constitutional requirement that an adversary hearing be had to determine the issue of obscenity, before ordinary process to enforce a state law proscribing the sale of obscene material may be resorted to, accurately reflect the present state of the law?

A bellwether among the cases holding that the First and Fourteenth Amendments to the United States Constitution require an adversary hearing before a prior restraint by seizure will be upheld is *Marcus* v. *Search Warrant* (1961), 367 U. S. 717.

In *A Quantity of Copies of Books* v. *Kansas* (1964), 378 U. S. 205, the United States Supreme Court considered a state statute which defined obscenity, proscribed a distribution of obscene materials, and authorized their seizure before, and their destruction after, an adversary determination of their obscenity. The Kansas state court judgment ordered 1,175 copies of 31 novels among a group of 59 alleged to be obscene burned or otherwise destroyed. In reversing, the United States Supreme Court concluded

that the procedure followed in issuing and executing the warrant of seizure prior to a hearing on the issue of obscenity was unconstitutional under the First Amendment, made applicable to the states by the Fourteenth Amendment, bottoming the decision upon *Marcus, supra.* It is interesting to note that Justice Black and Justice Douglas, while concurring in the judgment of reversal, expressed the opinion that *Roth* v. *United States, supra,* was "wrongly decided" and that it drew a blueprint "showing how to avoid the First Amendment's guarantee of freedoms of speech and press." Justices Harlan and Clark dissented, pointing out that the conclusion reached by the majority served "unnecessarily to handicap the states in their efforts to curb the dissemination of obscene material."

In the jumble of cases on the subject perplexing us is *City News Center, Inc.,* v. *Carson* (M. D. Fla. 1970), 310 F. Supp. 1018, paragraph 2 of the headnotes of which reads:

"Due process of law requires prior adversary, judicially-supervised hearing before seizure of allegedly obscene material since, without such threshold protection, evanescent freedom of unintimitated expression becomes meaningless."

Even though the author of the opinion stated at page 1021 that "probable cause as to whether obscenity exists has come to be recognized as a matter of *constitutional judgment,* unique in the law because of the fragile nature of the right protected, and incapable of determination by a policeman, grand jury, or judge acting ex parte, without a prior finding of probable cause in a judicially-supervised adversary hearing," he was constrained to declare as well that nothing in the opinion should "be construed to prohibit a prosecution made in good faith under a constitutional statute where the requirements of due process designed to protect freedom of expression are adhered to."

In holding *A Quantity of Copies of Books* v. *Kansas, supra,* and *Marcus* v. *Search Warrant, supra,* to be inapposite since they involved massive seizures of books, Chief Judge J. Edward Lombard stated in *United States* v. *Wild* (C. C. A. 2, 1969), 422 F. 2d 34, 38, that:

"We do not believe *Marcus* and *Quantity of Books* can

be read to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases.''

*Wild, supra,* was cited and approved by the United States Court of Appeals, Fifth Circuit, in *United States* v. *Fragus* (C. C. A. 5, 1970), 428 F. 2d 1211, the headnote of which states:

"The arrest of a panderer of gross smut may be effected under ordinary criminal processes without a prior judicial determination of obscenity of materials he peddles.''

The concept of the requirement of a prior determination of obscenity was further denigrated by the United States Court of Appeals for the ninth circuit, in *Miller* v. *United States* (C. C. A. 9, 1970), 431 F. 2d 655.

The difference in the case at bar from all that we have cited is that the single book involved in the charges was not *seized*; it was purchased. Indeed, patronage was solicited by the operators of the store, although limited to those at least eighteen years of age.

Unquestionably, the protections of the First Amendment to the United States Constitution are priceless, but so are those guaranteed by the entire document. Is freedom of expression so evanescent, so fragile, as to require unique protection?

At the risk of seeming ingenuous, we reject the sophistry that a citizen, policeman, grand jury or judge is incapable of determining whether obscenity exists without a prior finding of probable cause in a judicially-supervised adversary hearing.

Freedom of expression, like any freedom, is accompanied by responsibility of equal significance. One who undertakes to operate a bookstore should enjoy freedom of expression and he is guaranteed such. But he has no license to purvey material which is obscene. Such expression is not within the area of constitutionally protected speech or press.

In a free society the best restraints are those which are self-imposed. The seller of books must be trammeled not by a bureaucrat, but by his own sense of decency if the protections of the First Amendment are to endure. He

is no more free to pander than he is to shout fire in a crowded theatre. The "chilling" effect, the prior restraint about which so much has been written would best be effected by the seller, but when he elects to disseminate material which any even- minded person would find to be obscene, he must be held to have invited the consequences of his act.

Perhaps, it is attributable to a want of sophistication, but we find no difficulty in identifying what is obscene. We are of one mind with Mr. Justice Stewart who, while concurring in the decision in *Jacobellis* v. *Ohio* (1964), 378 U. S. 184, 197, wrote this about defining obscenity:

"I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. *But I know it when I see it * * *.*" (Emphasis ours.)

We believe that the same trust that must be reposed in those who are given the responsibility of determining the issue of obscenity in an adversary hearing which precedes an arrest and prosecution can and must be confided in those who are required to make the determination *ab initio* and upon a prosecution of criminal charges. We are not persuaded or compelled by force of decision of any tribunal to which we are subordinate to hold that the defendants herein are entitled to have the issue of obscenity twice tried. Nothing in R. C. 2905.34 suggests or portends a prosecution in anything but good faith and adherence to due process of law to protect freedom of expression. To find otherwise is to frustrate without good reason the ordinary methods of initiating criminal prosecution.

Defendants are presumed to be innocent and such presumption places upon the state the burden of proving beyond a reasonable doubt every essential element of a crime. Consequently, there is a greater protection afforded one in a trial thereon than would be available in a prior adversary hearing where, even if the nature of such could be conjured up, the degree of proof would be by a preponderance of the evidence.

We conclude that the orders of the Court of Common Pleas of Hamilton County are erroneous and should be reversed, set aside and held for naught and the causes remanded to that court for further proceedings according to law.

It seems to this court that we have wandered long enough in the maze of the law, have tortured words and strained precedent far too long. Perhaps, we should look back to an earlier time of vast confusion and contemplate this admonition: "Ye blind guides, which strain out a gnat, and swallow a camel." Matthew XXIII, 24.

*Judgment reversed.*

HESS, P. J., and YOUNG, J., concur.