**LESLIE TOBIN IMPORTS, INC. a Pennsylvania corporation, trading as the "Apparatus" Shop, and Leslie Tobin, Plaintiffs,**

v.

**Frank RIZZO, Commissioner of Police for the City of Philadelphia, and Hugh McCullough, Inspector of Police and Commander, Morals Squad, of the Philadelphia Police Department, Defendants.**

Civ. A. No. 69–1195.

United States District Court
E. D. Pennsylvania.

Nov. 24, 1969.

Bernard L. Segal and Needleman, Needleman, Segal & Tabb, Philadelphia, Pa., for plaintiffs.

Edward G. Bauer, Jr., City Solicitor, Edward Rosenwald, Asst. City Solicitor, Philadelphia, Pa., for defendants.

Harold E. Kohn, David Pittinsky, Philadelphia, Pa., for American Civil Liberties Union, Greater Philadelphia Branch.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JOSEPH S. LORD, III, District Judge.

### I.

### INTRODUCTION

This is an action seeking injunctive relief under the Civil Rights Act, 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1343. At the hearing on preliminary injunction, it was stipulated that the entire matter should be heard and considered as if on final hearing. F.R.Civ.P. 65(a) (2). The court has jurisdiction of the parties and the subject matter.

### II.

### FINDINGS OF FACT

The corporate plaintiff is Leslie Tobin Imports, Inc., and the individual plaintiff, Leslie Tobin, is its president. The corporate plaintiff operates a store known as the Apparatus at 128 South 20th Street in Philadelphia selling incense, candles, jewelry, buttons, posters and other symbols of hippie life, some of which are exhibited in the window. The store is located near two elementary schools, Center City School, 2025 Chestnut Street, Philadelphia, and St. Patrick's School, located in the 200 block of South 20th Street. Young children, aged 4 to 12, and adults passed by the store and had an opportunity to see the material displayed. The sale of the buttons and posters accounts for 15 to 20% of the income of the store.

On January 24, 1969, an officer from the Morals Squad of the Philadelphia Police Department, investigating a complaint, purchased two buttons in the store which had also been exhibited in the window. The buttons declared "Oral Sex Prevents Pregnancy" and "Go Fuc (followed by a letter that looks like but is not the letter "K") Yourself." Immediately following the purchase, other officers entered the store with a search warrant and seized several hundred buttons and arrested three employees. The buttons seized contained various slogans, mottos, sayings and quips referring to contemporary political, social and moral topics. There had been no prior judicial determination as to the question of obscenity before the warrants were issued and the arrests made.

On February 20, 1969, the employees were found not guilty by Judge J. Earl Simmons of the Philadelphia Municipal Court, of possession, etc., of obscene material. 18 P.S. § 4524.

On March 14, 1969, police, acting on complaints and armed with a search warrant, again raided the Apparatus, and a number of posters were seized. Two of the posters depicted rock musician, Jimmy Hendrix clothed, in the presence of a number of nude females whose bare breasts could be seen. At the time the police made the arrest, they observed a number of boys, age 11 to 16, looking in the window in which the posters were displayed. Again several employees of the Apparatus were arrested, the store closed, and the employees were held for trial on April 16, 1969.

While the trial stemming from the second arrest was pending, there was a third raid on the Apparatus Shop on March 31, 1969, again after complaints had been received. This time buttons, which had been the subject of the first arrest, and posters were seized, including those that were the subject of the second arrest. Because a number of school age youngsters were in the shop at the time of this midday raid, the Apparatus employees who were arrested, and the plaintiff, were charged with corrupting the morals of a minor child as well with possession, etc., of obscene material in violation of 18 P.S. § 4524. At the preliminary hearing arising from this ar-

rest, held on April 9, 1969 before Judge James L. Stern of the Family Division of the Court of Common Pleas, all of the persons arrested were discharged.

On April 16, 1969, the employees who were arrested in the March 15, 1969 raid were found not guilty by Judge Paul Dandridge of the Municipal Court of Philadelphia.

Although none of the seized articles has been returned to plaintiffs, neither of the defendants has present custody of them.

There had been no judicial determination of obscenity before either the second or third arrests. The decision as to what constituted obscenity in the instance of each of the three arrests was made solely by the defendant, Inspector McCullough. He concluded the materials were obscene because young children looked at them. He had no other and believed he needed no other standard in determining obscenity than the fact that children looked at the buttons and posters.

At no time after the Apparatus employees were discharged after their first arrest did the defendants make any attempt to determine how they had erred in the bringing of the prosecution and why there had been an acquittal. At no time after any of the arrests in the instant case did the defendants inquire as to the reasons for the acquittal. At no time did the defendants consult with their legal counsel in the City Solicitor's office or in the District Attorney's office about procedures to be followed in the Apparatus raids.

The defendant, McCullough, had been urged by counsel for the plaintiffs during the course of the third arrest to consult with counsel for the Police Department and the District Attorney's office in view of the pendency of the second arrest which involved the same posters as in the third arrest, and in view of the buttons, most of which had been seized at the time of the first arrest. After one attempt to call an Assistant District Attorney, the defendant McCullough made no further effort to discuss the matter with counsel and proceeded with the completion of the third arrest. Nonetheless, we find that Inspector McCullough acted in good faith and that he was motivated by a desire to insulate juveniles from what he considered to be pornographic material.

After the hearing and discharge in the third case on April 9, 1969, the defendant McCullough told one of plaintiffs' employees: "Well, see you Friday." While no further arrests were made or threatened, the police continued a surveillance of the Apparatus into the middle of April.

The defendant Frank Rizzo is Police Commissioner of Philadelphia and has supervision over and control of all Philadelphia policemen, including members of the Morals Squad.

### III.

### THE LAW

Defendants initially attack our jurisdiction as to the corporate plaintiff, arguing that a corporation has no standing to invoke Title 42 U.S.C. § 1983 and relying mainly on Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). In that case, certain individuals and the C.I.O. sought injunctive relief against the enforcement of certain ordinances of the City of Newark which allegedly interfered with plaintiffs' right of freedom of speech. The suit asserted that the ordinances were unconstitutional under the privileges and immunities clause of the Fourteenth Amendment. The action was brought under 28 U.S.C. § 41, now codified as 42 U.S.C. § 1983. The Hague Court said, at page 514, 59 S.Ct. at page 963:

> "Natural persons, and they alone, are entitled to the privileges and immunities which Section 1 of the Fourteenth Amendment secures for 'citizens of the United States.' Only the individual respondents may, therefore, maintain this suit. * * *"

At first blush, this would seem to be a mortal blow to the corporate plaintiff's right to invoke § 1983 as a basis for fed-

eral jurisdiction. Upon analysis, however, we are not convinced that this is so. *Hague* involved a direct vindication of the right of free expression under the privileges and immunities clause. This case does not. It merely asserts that First Amendment rights are potentially involved and that the state procedures, *i. e.*, seizure by police without a prior judicial determination of obscenity, are a denial of due process. The question of obscenity is not before us. See Tyrone, Inc. v. Wilkinson, 410 F.2d 639, 640 (C.A. 4, 1969). Thus, we are not called upon to decide, as was the Court in *Hague*, whether the expressions are protected, but only whether due process (and not privileges and immunities) was violated.

In Grosjean v. American Press Company, Inc., 297 U.S. 233, 244, 56 S.Ct. 444, 447, 80 L.Ed. 660 (1936), the Court said:

> "Appellant contends that the Fourteenth Amendment does not apply to corporations; but this is only partly true. A corporation, we have held, is not a 'citizen,' within the meaning of the privileges and immunities clause. Paul v. Virginia, 8 Wall. 168, 19 L.Ed. 357. *But a corporation is a 'person' within the meaning of the equal protection and due process of law clauses, which are the clauses involved here.* Covington L. Turnpike Road Co. v. Sandford, 164 U.S. 578, 592, 17 S.Ct. 198, 41 L.Ed. 560, 565; Smythe v. Ames, 169 U.S. 466, 522, 18 S.Ct. 418, 42 L.Ed. 819, 840." (Emphasis added.)

In A Quantity of Copies of Books et al. v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), a seizure of allegedly obscene books under a Kansas statute was involved. The Court did not reach the question of whether or not the novels were obscene, but rested its judgment on the constitutionality of the procedures followed. The Court said, at page 208, 84 S.Ct. at page 1724:

> "We conclude that the procedures followed in issuing the warrant for the seizure of the books, and authoriz-

ing their impounding pending hearing, were constitutionally insufficient because they did not adequately safeguard against the suppression of non-obscene books. For this reason we think the judgment must be reversed. Therefore we do not reach, and intimate no view upon, the appellant's contention that the Kansas courts erred in holding that the novels are obscene. * * * "

So here, we are not deciding whether the material is protected by the First Amendment. We are merely deciding whether due process was afforded in the methods used to bring that question to state determination. It is a denial of due process that is asserted and the corporate plaintiff is a "person" for the purpose of that assertion. Grosjean v. American Press Company, Inc., *supra*.

Defendants argue that we should abstain from deciding the federal question here involved. We do not agree. The appropriateness of abstention has been sharply restricted by Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), where the Court directed that abstention be invoked only in "narrowly limited 'special circumstances'." This is particularly true where First Amendment rights are involved. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In Tyrone, Inc. v. Wilkinson, 294 F.Supp. 1330 (E.D.Va., 1969), the court said, at page 1332:

> "* * * It should be borne in mind that questions of abstention and of injunctive relief are not the same. See Dombrowski v. Pfister, 380 U.S. 479, 483 at 489, 85 S.Ct. 1116, 14 L.Ed.2d 22. Wherever federal courts sit, rights under the Federal Constitution are always a proper subject for adjudication. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967)."

We are convinced that "whatever advantages, if any, there may be in abstention are plainly outweighed by the dangers to free speech which might result from delay accompanying state proceedings."

Bee See Books, Inc. v. Leary, 291 F.Supp. 622 (S.D.N.Y., 1968).

Turning, then, to the merits.

■ The core question in this case is the constitutionality of methods adopted which were calculated to, and did suppress a form of expression. Obscenity, of course, is not constitutionally protected expression, but "the Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed. 2d 584 (1963).

■ In Marcus v. Search Warrants of Property, etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), Missouri procedures permitted the issuance of a search warrant on the filing of a sworn complaint with a judge or magistrate. If the complaint stated "positively and not upon information or belief," or stated "evidential facts from which such judge or magistrate determines the existence of probable cause" to believe that obscene material "is being held or kept in any place or in any building," "such judge or magistrate shall issue a search warrant directed to any peace officer commanding him to search the place therein described and to seize and bring before such judge or magistrate the personal property therein described." The owner of the property was not afforded a hearing before the warrant issued; the proceeding was *ex parte*. The Court said, at pages 731–732, 81 S.Ct. at page 1716:

"We believe that Missouri's procedures as applied in this case lacked the safeguards which due process demands to assure nonobscene material the constitutional protection to which it is entitled. Putting to one side the fact that no opportunity was afforded the appellants to elicit and contest the reasons for the officer's belief, or otherwise to argue against the propriety of the seizure to the issuing judge, still the warrants issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene. * * * "

Later, in A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), a Kansas statute authorized the seizure of allegedly obscene books before an adversary determination of their obscenity. The state attorney general went further than the statute required and filed an information identifying by title 59 novels, and submitted six of these, together with a seventh novel, with the information. Again, although not required by statute, the district judge conducted a 45 minute *ex parte* inquiry in which he "scrutinized" the books, determined that they appeared to be obscene and issued the warrant. The Court said, at pages 210–211, 84 S. Ct. at pages 1725–1726:

It is our view that since the warrant here authorized the sheriff to seize all copies of the specified titles, and since P–K was not afforded a hearing on the question of the obscenity even of the seven novels before the warrant issued, the procedure was likewise constitutionally deficient. * * *

"We therefore conclude that in not first affording P–K an adversary hearing, the procedure leading to the seizure order was constitutionally deficient. * * * "

■ The procedure here was simply seizure, albeit with a warrant. Nothing was submitted for the examination of a judicial officer. There was no judicial hearing as to the obscenity *vel non* of the material. Plaintiff had no opportunity to be heard or to inquire into the basis of a determination of obscenity. The seizure occurred *solely* on the determination of a police officer that the material was obscene, "without regard to the possible consequences for constitutionally

protected speech."[1]  Marcus v. Search Warrants of Property, etc., *supra*, 367 U.S. at 731, 81 S.Ct. at 1716. And the vice of the procedures here adopted is underscored by the fact that the three prosecutions for possession of obscene material arising out of the seizures were all dismissed. Some 200 buttons were seized at the time of the first arrest, many of them clearly not obscene, and only two were used in the unsuccessful prosecution. We have no doubt that the police procedures adopted here fell far short of constitutional demands. If a court decides that the material is of such pornographic nature that First Amendment guarantees to not protect it, the police may seize it. But the corporate plaintiff is entitled to have a court, not a policeman, pass on that question, with opportunity to each side to be heard. Anything less than that is, not a denial of freedom of speech, but a denial of due process of law. See also Tyrone, Inc. v. Wilkinson, 294 F.Supp. 1330 (E.D.Va., 1969).

■ Defendants argue that there have been no raids or seizures since March 31, 1969, and that there is therefore no showing of any need for an injunction. We do not agree. There is nothing of record to indicate they will not be resumed. "The presumption of irreparable harm is manifest here where it is alleged that first amendment rights have been chilled as a result of both government action and inaction." Schnell v. City of Chicago, 407 F.2d 1084, 1086 (C.A.7, 1969). Plaintiff is entitled to judicial restraint of further unconstitutional conduct.

■ While an injunction in this case would prevent defendant McCullough from further raids without prior judicial proceedings, it would not prevent other officers not parties to this suit from pursuing such an unconstitutional course. However, the defendant Rizzo, by virtue of his office, is in a position to prevent such conduct by his subordinates. In Schnell v. City of Chicago, *supra*, the court said, at page 1086:

"* * *. From a legal standpoint, it makes no difference whether the plaintiffs' constitutional rights are violated as a result of police behavior which is the product of the active encouragement and direction of their superiors or as a result of the superiors' mere acquiescence in such behavior. In either situation, if the police officials had a duty, as they admittedly had here, to prevent the officers under their direction from committing the acts which are alleged to have occurred during the Convention, they are proper defendants in this action. * * *"

See also: Note, The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 Yale L.J. 143 (1968).

We think, therefore, that an effective remedy here must include a mandate that defendant Rizzo prevent the officers under his command from making any future seizures of allegedly obscene material from the corporate plaintiff without a prior judicial adversary proceeding.

■ Plaintiffs also ask that we direct the return of the seized articles. However, since we have found that they are not in the possession or custody of either of the defendants, such relief here would be inappropriate.

■ As to the individual plaintiff, the action will be dismissed. There is no showing that his individual rights have been violated. *Cf.* Erlich v. Glasner, 274 F.Supp. 11, 12 (C.D.Cal., 1967).

We therefore enter the following

### ORDER

And now, this 24th day of November 1969, it is ordered as follows:

(1) The action as to the plaintiff Leslie Tobin individually is dismissed.

---

1. We have no doubt that expressions on buttons are "speech." Plaintiff testified that the buttons "were a social comment on the mores and hypocrisy of our so- ciety." In our judgment, "Stop Vietnam" is as much speech on a button as it is in a newspaper, book or movie.

(2) The defendant McCullough is permanently enjoined from seizing any allegedly obscene material from the corporate plaintiff without a prior judicial adversary determination of obscenity.

(3) The defendant Rizzo is directed to prevent any police officers of the City of Philadelphia under his command from seizing any allegedly obscene material from the corporate plaintiff without a prior judicial determination of obscenity.

(4) Plaintiffs' motion to mark as an exhibit and to admit into evidence the affidavit of Donald Rifkin is denied.