**Wayne GENTRY**

v.

**W. L. HOWARD, Mayor of the City of Monroe, Louisiana, et al.**

**Civ. A. No. 15759.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Oct. 25, 1973.

Paul Henry Kidd, Frank J. Kenner, Kidd, Katz & Halpin, Monroe, La., for plaintiff.

Haynes L. Harkey, Jr., Hayes, Harkey, Smith & Cascio, Pipes & Pipes, Monroe, La., for defendants.

DAWKINS, Senior District Judge.

## I. NATURE OF THE CASE

This civil action is premised upon §§ 1983 and 1985 of the Civil Rights Act and §§ 2201 and 2202 of the Declaratory Judgment Act, jurisdiction being based upon 28 U.S.C. § 1343(3).

The original plaintiff here was Wayne Gentry, an individual. The defendants were W. L. Howard, H. W. McSherry, W. D. H. Rodriguez, and J. C. Kelly, Jr. (who were, respectively, Mayor and Commissioner of Public Health and Safety, Commissioner of Finance and Utilities, Commissioner of Streets and Police Chief, at the time this action was instituted), and the City Council of Monroe.

Injunctive relief is sought to restrain defendants from prosecuting Gentry under the City's ambulance ordinance, from enforcing the ordinance, and from operating an ambulance service itself. A declaratory judgment is sought decreeing the City's ambulance ordinance to be unconstitutional, prohibiting the City from entering the ambulance business in the absence of a compelling public interest, and prohibiting it from regulating unreasonably the ambulance business. A money judgment of $155,-897.00 against defendants individually, and/or in their official capacities, is sought.

An initial motion to dismiss was filed by defendants challenging this Court's jurisdiction of the subject matter and urging that Gentry, an individual, was without right to seek relief on behalf of Gentry's Ambulance Service, Inc., a corporation. The motion to dismiss for lack of jurisdiction was overruled, but we ordered the corporation to be joined as a party plaintiff, referring Gentry's right to appear as a plaintiff to the merits.

The matter having been tried without jury, we now make and file our Findings of Fact and Conclusions of Law:

## II. FINDINGS OF FACT

1. In early 1967, the funeral homes in the City of Monroe, which previously provided most of the ambulance service in the area, discontinued their ambulance activities because of the financial impact of their recent application of federal wage and hour regulations.

2. An ensuing influx of entrepreneurs of all sorts created a situation not in the public interest in having safe, reliable ambulance service. Cut-throat competition and unregulated use of equipment resulted in danger to the public as well as to ambulance patrons.

3. April 8, 1969, in response to complaints by police officials and a group of doctors, the Commission Council of Monroe adopted an ordinance comprehensively regulating ambulance service within the City, requiring a certificate of public convenience and necessity to engage in such business, and fixing a schedule of maximum charges. This ordinance, by its own terms, became effective ninety days after adoption.

4. May 16, 1969, (Richard) Wayne Gentry, a plaintiff here, organized a corporation named Gentry's Ambulance Service, Inc., he being the sole stockholder, and transferred to it the assets, other than accounts receivable, of the ambulance business he had been operating under a trade name.

5. June, 1969, Gentry's Ambulance Service, Inc., made application to the City for a certificate of public convenience and necessity for operation of an ambulance business, and a certificate was issued to it by the City, effective July 8, 1969. This certificate initially was issued, through error, in the name of Wayne Gentry, doing business as Gentry's Ambulance Service, but a corrected certificate was issued in the name of the corporation following a hearing June 30, 1970, later described herein.

6. No certificate was issued by the City to any other applicant following adoption of its ordinance and prior to institution of this suit (or since, so far as the record reflects). However, the certificate granted to the Gentry corporation was understood not to be exclusive.

7. Several months after beginning operations, the corporation and Gentry, its President, began publishing newspaper advertisements, and otherwise disseminating statements that the rates fixed by the ordinance were inadequate; that the corporation was losing money, and that relief must be forthcoming if satisfactory ambulance service was to be maintained. Three alternatives were mentioned by complainants: (1) an increase in ordinance rates, (2) a public subsidy to the corporation, or (3) initiation of a public ambulance service.

8. November 22, 1969, the corporation published an advertisement to the effect that it was increasing the base service rate temporarily, effective immediately, from $22.00 to $32.00. After being advised by the Police Chief that this was a violation of law, the corporation ceased making the additional charge.

9. December 30, 1969, Gentry publicly announced that his corporation was terminating ambulance service within the City the following day. However, after a meeting with the Police Chief and Commissioner of Finance and Utilities, Gentry stated that the corporation would continue providing service.

10. An informal meeting between Gentry and the members of the Commission Council was held January 13, 1970, but no decision was made or relief promised by the Council.

11. There is no evidence in the record to indicate that the corporate plaintiff ever made formal request for a public hearing on a rate increase to the Council or that the Council ever refused to hold such a hearing.

12. On or about March 12, 1970, the Council decided it must plan for and initiate a public ambulance service, this decision being executed June 8, 1970, when the City announced commencement of its service.

13. In the interim between the City's decision to enter the business and its actual initiation of service, Gentry intentionally violated the ordinance rate schedule in order to test its constitutionality. The person affected by the overcharge filed a warrant, and Gentry subsequently was prosecuted, convicted, and fined $5.00 in Monroe City Court. This sentence was appealed to the local Louisiana District Court.

14. June 9, 1970, as the result of other alleged rate violations, the Council resolved to hold a public hearing with respect to possible revocation, alteration, or suspension of the certificate of public convenience and necessity held by the Gentry corporation.

15. June 10, 1970, this suit was filed and, by order of this Court rendered June 17, 1970, a hearing was called by the City Council with respect to certain complaints made by plaintiffs and to determine whether a compelling public interest existed for the City's entry into the ambulance business. The two hearings were combined by the City into one hearing conducted June 30, 1970. Complainants were permitted to call any witnesses, present any documentary evidence, examine and cross-examine witnesses, including members of the Commission Council and the Chief of Police, and argue their position. They also were invited to present evidence as to rates and subsidies.

16. In its written findings of fact and conclusions issued after its hearing, the Council stated that:

(a) The maximum rates fixed in the existing City ordinance were deemed to be those which should be charged at that time for ambulance service within the City.

(b) Gentry's presentation for relief at the hearing was for unlimited subsidy by the City, to be handled as follows: The corporation would submit and assign to the City each ambulance bill due it and unpaid within thirty days; the City would pay the full amount of such bill to the corporation, and responsibility for collecting the account then would devolve upon the City, and, if it was not collected, or collectible, the loss would be the City's.

(c) The City should not and would not subsidize the operation of a private ambulance business.

(d) The City entered the ambulance business because of continuing threats by the Gentry corporation that it might cease business at any time, since there was no other ambulance service in the City, and because the Council could not risk that citizens of the City suddenly might find themselves without emergency ambulance service at a reasonable cost.

(e) The City's entry into ambulance service was motivated by a compelling public interest, not because of any desire on the part of its Council, its members or Police Chief to deprive the corporation or its President, Wayne Gentry, of due process of law.

17. We find the evidence presented at the hearing June 30, 1970, and upon trial in this Court, shows that the City entered the ambulance service business because of a compelling public interest, not because of any desire on the part of its Council, its members or Police Chief to deprive the corporation or its President of due process of law. We further find that the reasons given by the Council in its findings and conclusions following the June 30, 1970 hearing were and are the true and only reasons for the City's entry into that business.

## III. CONCLUSIONS OF LAW

1. We have jurisdiction of this action under 28 U.S.C. § 1343(3) even though plaintiffs essentially are claiming impairment of property rights. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), held that there is no distinction between personal liberties and proprie-

tary rights with respect to jurisdiction under that section of the Judicial Code.

■■ 2. As to Gentry himself, this action must be, and is, dismissed since he is not a proper party plaintiff. F.R. Civ.P., Rule 17(a), requires that "[e]very action shall be prosecuted in the name of the real party in interest"; any damages here were suffered by the corporation, not Gentry individually. In a similar situation, Erlich v. Glasner, 418 F.2d 226 (9th Cir., 1969), held that a stockholder-owner, with his wife, of all the capital stock of a corporation of which he was president and general manager could not bring an action under the Civil Rights Act for damages suffered by the corporation. Nothing in that Act permits an individual to circumvent the rule that a stockholder or corporate officer may not maintain an action for himself for an alleged wrong committed by a third party upon the corporation, upon the theory that such wrong devalued his capital stock or affected his livelihood as a corporate officer. *Cf.*, Leslie Tobin Imports, Inc. v. Rizzo, 305 F.Supp. 1135 (E.D.Pa., 1969).

■■ 3. Although no distinction may be drawn between personal liberties and proprietary rights, as a guide to the boundaries of our jurisdiction under 28 U.S.C. § 1343(3), when natural persons seek to assert 14th Amendment rights (Lynch v. Household Finance Corporation, *supra*), corporations may invoke this proviso as a basis for federal jurisdiction only—and the word is *only*—to protect corporate property rights. It is established law that though corporations are "persons" within the meaning of the equal protection and due process clauses of the Fourteenth Amendment, they are not "citizens" within the meaning of the privileges and immunities clause. Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Llano Del Rio Co. v. Anderson-Post Hardwood Lumber Co., 79 F.Supp. 382 (W.D.La., 1948); Leslie Tobin Imports, Inc. v. Rizzo, 305 F.

Supp. 1135 (E.D.Pa., 1969); Mini Cinema 16 Inc. of Ft. Dodge v. Habhab, 326 F.Supp. 1162 (N.D.Iowa, 1970).

■ 4. Gentry Ambulance Service, Inc., was not deprived of property without due process of law when Monroe established a competing ambulance service. Since that corporation held a *non*-exclusive franchise or license granted by the City, it cannot complain now of competition from a publicly-created agency performing similar functions in the public interest. Creation of a competitor by a governmental body's actions, whether it results simply in loss of revenue to a privately owned company or, ultimately, in its being forced to cease business, does not amount to a taking or deprivation of property within the meaning of the Fourteenth Amendment. Durham v. State of North Carolina, 395 F.2d 58 (4th Cir., 1968). As stated in Helena Water Works Co., v. Helena, 195 U.S. 383, 392, 25 S.Ct. 40, 43, 49 L.Ed. 245 (1904):

> "It is doubtless true that the erection of such a plant by the city will render the property of the water company less valuable and, perhaps, unprofitable; but if it was intended to prevent such competition, a right to do so should not have been left to argument or implication, but made certain by the terms of the [franchise]."

■ 5. Since commencement of a public ambulance service was a proper exercise of its powers, the Council was under no duty to consult the corporation before establishing that service. Plaintiff's contention that the City's failure to hold a prior public hearing in order to determine economic feasibility and compelling public interest violated its Fourteenth Amendment rights totally is without merit. Although we have no doubt that a compelling public interest is involved in assuring reliable ambulance service at a price within reach of the public's pocketbook, Gentry's interest is political, not judicial. As stated in Daniel v. Family Insurance Co., 336 U.S. 220, 224, 69 S.Ct. 550, 553, 93 L.Ed. 632 (1949), "[w]e are not equipped to

decide desirability; and a court cannot eliminate measures which do not happen to suit its tastes if it seeks to maintain a democratic system. The forum for the correction of ill-considered legislation is a responsive legislature." Courts no longer resort to the due process clause as a weapon "to strike down state laws, regulatory of business . . . conditions, because they may be out of harmony with a particular school of thought." Williamson v. Lee Optical Co., 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). *See also* Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

6. Monroe City Ordinance No. 3870, Section 4A–17(2)(a) regulating the maximum rate to be charged for ambulance service in the City is not unconstitutional. The test applied by the Supreme Court is that if the ordinance has a rational relationship to a legitimate end it must be upheld as a valid exercise of the State's (City's) police power. *E. g.*, Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Railway Express Agency, Inc. v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Regulating maximum charges for ambulance service in order to make this necessity financially available to a majority of the public is as much a legitimate state purpose as imposing regulations to insure safety of the activity.

Even though there is some evidence here to indicate that a private enterprise could not, at a profit, operate under the City's ordinance, we are unwilling to deem this an unreasonable and arbitrary exercise of police power. This is especially true when it concerns an activity so integrally related to the safety and well-being of the public. "Mr. Justice Holmes even went so far as to say that 'subject to compensation when compensation is due, the Legislature may forbid or restrict any business when it has a sufficient force of public opinion behind it.' Tyson & Brothers v. Banton,

273 U.S. 418, 445, 446, 47 S.Ct. 426, 434, 71 L.Ed. 718 (1927) (dissenting opinion)." Ferguson v. Skrupa (1963), 372 U.S. 726, at 731, note 8, 83 S.Ct. 1028 at 1031, 10 L.Ed.2d 93. In any event, the Supreme Court has upheld maximum price legislation in a variety of areas less affected with public interest than is the ambulance service, Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L. Ed. 940 (1934); Townsend v. Yeomans, 301 U.S. 441, 57 S.Ct. 842, 81 L.Ed. 1210 (1937); O'Gorman & Young v. Hartford Fire Ins. Co., 282 U.S. 251, 51 S.Ct. 130, 75 L.Ed. 324 (1931); Gold v. DiCarlo, 380 U.S. 520, 85 S.Ct. 1332, 14 L.Ed.2d 266 (1965); and this plaintiff cannot be heard now to complain that rate regulation is unreasonable when it voluntarily entered the ambulance business after the regulation was enacted. The Supreme Court, in Nebbia v. New York, 291 U.S. 502, 533, 54 S.Ct. 505, 78 L.Ed. 940 (1934), is apropos: ". . . if Munn and Scott wished to avoid having their business regulated, they should not have embarked their property in an industry which is subject to regulation in the public interest. . . ."

7. Plaintiff's contention that the ordinance, though constitutional when enacted, became unconstitutional as a result of changing conditions—"i. e., the application of the extension of coverage of ambulance employees under the federal wage and hour law," has no merit. There has been no extention of coverage with respect to ambulance employees since April 8, 1969, when the ambulance ordinance was adopted. The last change in the Wage-Hour laws of any significance here occurred in 1966 when Public Law 89–601 amended 29 U. S.C. § 206, raising the minimum wage to $1.40 per hour during the first year from its effective date, and not less than $1.60 thereafter, except that the minimum for employees covered for the first time was placed on an annual spiral beginning at $1.00 and stepping up to the $1.60 general minimum in annual increments. It was 1967 when funeral homes in Monroe withdrew from the ambulance

business because of the 1966 amendments to the law. The 1966 Opinion of the Administrator for the first time held that ambulance drivers and attendants making intrastate trips were engaged in interstate commerce. (See discussion of this ruling and the coverage of ambulance company employees under the Wage-Hour laws in Wirtz v. A–1 Ambulance Service, Inc., 299 F.Supp. 197 (E.D.Ark., 1969).) In any event, a mere change in minimum wage and hour laws requiring payment of a higher wage to ambulance drivers does not render the City's ordinance unconstitutional.

8. Any failure on the part of the City Council or its officials to afford the Gentry corporation a public hearing with respect to rates, and the City's entry into the ambulance service, business was rectified by the hearing held June 30, 1970, where, as heretofore shown, the corporation and its President were granted wide latitude to present their case and argue their claims.

9. There is no evidence in the record to support plaintiff's claim that defendants have conspired to violate his constitutionally protected rights under color of law; hence, no cause of action arises under 42 U.S.C. § 1985.

10. Since we find and hold that plaintiff's rights, privileges, and immunities, as secured by the Constitution, have not been violated, it is unnecessary for us to consider the issue of sovereign immunity and other matters related to determining damages.

11. When the merits of this case are analyzed, we have before us merely an unfortunate instance of business failure. We may not rule that the City was under a legal duty to grant a public subsidy to a private business enterprise in order to permit it to operate profitably; or to raise rates when, in the judgment of the Council, to do so might not have placed plaintiff's business on a profitable basis and might actually have increased its losses. The

Council was under no duty to raise the maximum fee schedule to a point which guaranteed the corporation any particular rate return. Moreover, based upon its continuing threats to cease business, the Council acted in a reasonable and prudent manner in providing an ambulance service vital to the citizens of the City, which it could not have done if the corporation made good on its threats. Indeed, initiation of this service was one of the alternatives suggested by plaintiff itself in its newspaper advertisements.

12. For the foregoing reasons, complainant's suit is dismissed at its cost.

A proper decree, pursuant to our local Rule 9, should be presented.